# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

KENYATTA JAMES,

                  Plaintiff,

          -against-

CITY OF NEWBURGH, Police Chief DANIEL CAMERON, Police Officer MYRA RUDE, Police Officer CHRISTOPHER FLAHERTY, Detective AARON WEAVER, Police Officer JOHN MAGUIRE, Police Officer ROMAN SCUADRONI, Detective THOMAS NAFEY, JOSEPH CORTEZ, and JOHN and JANE DOE 1-10,

                  Defendants.

**COMPLAINT**

Jury Trial Demanded

21 CV 1673

"The actions taken by the police officers suggested to the complainant that the defendant was the perpetrator…This action by the police is akin to the police having pointed out the defendant as the perpetrator."

*People v. James*, 128 A.D.3d 723, 725 (2d Dep't 2015) (citations omitted)

Plaintiff Kenyatta James, by and through his attorneys, the law firm of Elefterakis, Elefterakis & Panek, alleges as follows:

## INTRODUCTION

1.      Plaintiff Kenyatta James spent over nine and a half years incarcerated for crimes he did not commit due to the defendant police officers' manipulation of a faulty witness using unconstitutional identification procedures. *See id.* at 727 (plaintiff's "constitutional right to due process was violated by the improper showup").

## NATURE OF THE ACTION

2.      This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

4.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## NOTICE OF CLAIM

6.     Within ninety days after the claim alleged in this complaint arose, a written notice of claim was duly served upon defendants.

7.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claims has been neglected or refused.

8.     This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

## JURY DEMAND

9.     Plaintiff demands a trial by jury in this action.

## PARTIES

10.    Plaintiff Kenyatta James is a resident of Orange County in the State of New York.

11.    Defendant City of Newburgh ("Newburgh") is a municipality organized under the laws of the State of New York. It operates the Newburgh Police Department ("NPD"), a department or agency of defendant Newburgh responsible for the appointment, retention, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.     The individual defendants, at all times relevant herein, were officers, employees and agents of the NPD. The individual defendants are sued in their individual capacities.

13.     At all times relevant defendants John and Jane Doe 1 through 20 were police officers, detectives, supervisors or final policymakers employed by the NPD. Plaintiff does not know the real names of defendants John and Jane Doe 1 through 10.

14.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the NPD. Defendants John and Jane Doe 1 through 10 are sued in their individual capacities.

15.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

### The Crime and Initial Investigation

16.     On the evening of July 30, 2010, a woman named "V.V."[i] was allegedly robbed at knifepoint by a twenty-year-old light-skinned Black man named "Manny," who was six feet tall and wearing jeans and a brown and white striped shirt.

---

[i] The complainant's name is initialized to protect her privacy.

17.     During the crime, which is alleged to have taken place on Nicoll Street between Grand Street and Liberty Street, "Manny" brandished a silver knife and stole V.V.'s purse containing $200. "Manny" then fled Eastbound on Nicoll Street.

18.     V.V. went to the home of her uncle, a correction officer who lived nearby.

19.     V.V.'s uncle called 911, reported the crime and conveyed V.V.'s description of "Manny" to the operator.

20.     Minutes later, defendant Rude, then a rookie Newburgh police officer, and other unidentified defendant officers, responded to V.V.'s uncle's home.

21.     Approximately a half-mile to the South, defendants Weaver and Flaherty detained plaintiff, a shirtless 33-year-old man wearing shorts and standing five-foot-eight. *See* Figure 1, *infra*.



*Figure 1* Annotated Google Map of Newburgh, New York

22.     Plaintiff did not match the description provided by V.V.

23.     Plaintiff was searched by defendants including Weaver and Maguire.

24.     Plaintiff possessed neither the silver knife used by the perpetrator nor any of V.V.'s property.[ii]

25.     Nevertheless, defendant officers including Rude told V.V. and her uncle that police had "found the person that robbed" V.V.

26.     Defendant Rude and unidentified defendants took V.V. and her uncle to the location where plaintiff was detained.

**The Show Up**

27.     When V.V. and her uncle arrived at the location where plaintiff was being held, plaintiff was handcuffed, shirtless and flanked by uniformed officers, including defendants Weaver, Flaherty and Nafey, and marked police cars.

28.     V.V. indicated she could not identify plaintiff.

29.     Defendants moved V.V. closer to plaintiff and defendants Weaver and Flaherty draped a shirt across plaintiff's body.

---

[ii] Subsequent DNA analysis of the property, recovered approximately one half-mile from where plaintiff was stopped, further exculpates plaintiff.

30.     The individual defendants' conduct in connection with the show up was unconstitutional, unduly suggestive and tantamount to the police having pointed out plaintiff, who was innocent, as the perpetrator. *James*, 128 A.D.3d at 725.

31.     V.V. then purportedly identified plaintiff.[iii]

**Plaintiff is Charged**

32.     Defendants Flaherty, Weaver, Maguire and Rude, among others, took plaintiff into custody and brought him to a police precinct.

33.     At the precinct, under the supervision of defendant Daniel Cameron, plaintiff was subjected to illegal interrogation by defendants including Weaver and Cortez.

34.     Defendants, including Rude, Maguire, Scuadroni, Flaherty and Weaver, manufactured false evidence against plaintiff, including incident reports and other paperwork, and forwarded them to prosecutors at the Orange County District Attorney's Office. The individual defendants misled prosecutors about the nature of the evidence.

35.     Mr. James was booked on charges including first degree robbery.

---

[iii] V.V. is intellectually disabled and was under the influence of psychotropic medications and suffering from memory deficits at the time of the show up. She admitted at trial that she "forget[s] things like in five minutes." *See People v. James*, 179 A.D.3d 1095, 1096-97, *leave to appeal denied,* 35 N.Y.3d 971 (2020) ("She could not remember how she described the defendant, and when asked how she recognized him, she stated, 'by his shirt.'") (brackets omitted).

## Procedural History

36.     On July 31, 2010, defendants filed a criminal complaint against plaintiff, initiating the prosecution.

37.     On August 5, 2010, plaintiff was indicted by an Orange County Grand Jury.

38.     On September 13, 2010, the Orange County District Attorney filed the indictment under indictment number 2010-464.

39.     On July 6, 2011, Mr. James was indicted on the charge of Criminal Possession of a Weapon in the Third Degree under indictment number 2011-382 and the case proceeded under that indictment number.

40.     Before trial, the court held a pre-trial *Wade* hearing and denied Mr. James's motions to suppress.

41.     In 2011 a jury trial was conducted, and Mr. James was convicted of the robbery and weapons possession charges.

42.     On January 31, 2012, Mr. James was sentenced to seventeen years incarceration followed by five years of post-release supervision on the conviction of Robbery in the First Degree and to a concurrent sentence of seven years incarceration followed by five years of post-release supervision on the conviction of Criminal Possession of a Weapon in the Third Degree.

43.    Mr. James began serving his sentence immediately.

44.    On May 6, 2015, the Second Department vacated the conviction, holding that "the active police involvement in the identification process—the police officers' draping of the shirt over the defendant's chest immediately after the complainant had hesitated in identifying the shirtless defendant as the perpetrator and before she did identify him—renders this showup identification procedure unduly suggestive." *James*, 128 A.D.3d at 725 (citations omitted).

45.    In 2016, Mr. James was again tried and convicted, with his sentence increased to twenty-five years incarceration followed by five years of post-release supervision on the conviction of Robbery in the First Degree and to a concurrent indeterminate sentence of from three and one-half to seven years on the conviction of Criminal Possession of a Weapon in the Third Degree.

46.    After Mr. James had served approximately eight years in prison after his initial sentencing, by Decision & Order dated January 29, 2020, a unanimous panel of the Appellate Division, Second Department vacated his conviction and dismissed the indictment as against the weight of the evidence. *James*, 179 A.D.3d at 1096-97.

47.    This dismissal constitutes a final and favorable termination of the criminal proceedings.

48.    Mr. James was released on or about February 5, 2020.

49.    In all, Mr. James spent 3,478 days, or nine years, six months and seven days, in New York jails and prisons as a result of defendants' misconduct.

## PLAINTIFF'S INJURIES AND DAMAGES

50.    Mr. James suffered severe emotional and mental anguish and pain as a result of being punished for crimes he did not commit. He spent a total of approximately two years in solitary confinement, was denied effective treatment for his emotional injuries while incarcerated and continues to suffer mental anguish to this day. For example, plaintiff suffers depression, anxiety and sleeplessness due to the traumas defendants inflicted upon him.

51.    Mr. James also suffered physical injury as a result of his wrongful conviction. While incarcerated, Mr. James was stabbed approximately sixteen times, resulting in severe, permanent, disabling and disfiguring injuries that will require ongoing treatment and therapy and may require surgery.

52.    Plaintiff was also denied the opportunity to pursue normal relationships with, and to enjoy the companionship of, family members and friends.

53.    Plaintiff was denied gainful employment and income. His earning power and ability to support himself have been permanently hampered by the years of productive work experience his wrongful imprisonment denied him.

54.     Plaintiff has been publicly shamed, disgraced, ridiculed, and humiliated, in the most extreme manner possible. He was a figure of outrage and disdain for events in which he had no part, including through the publication of defamatory news articles describing him as responsible for the alleged robbery and of low character. Nothing can undo the reputational damage he has sustained.

55.     Plaintiff and his family incurred expenses seeking to defend plaintiff and prove his innocence.

56.     Additionally, Mr. James claims, *inter alia*, loss of liberty; loss of enjoyment of life; continuing pain and suffering, including post-incarceration psychological issues; post-incarceration mental health treatment costs; lost earnings while incarcerated; impaired earning capacity and limitations on future employment opportunities; emotional distress; humiliation; indignities; embarrassment; degradation; loss of consortium; physical injuries and lack of access to health care while incarcerated; attorneys' fees, and other pecuniary losses; and past pain and suffering; loss of family relationships; and loss of reputation.

## FIRST CLAIM
### § 1983 Malicious Prosecution
(against Rude, Weaver, Maguire and Flaherty)

57.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

- 12 -

58.     Defendants, acting deliberately and with malice, initiated and took steps to continue the criminal prosecution of Mr. James without probable cause or other legal justification by orchestrating a suggestive identification of plaintiff by V.V. and thereafter convincing V.V. that plaintiff was in fact "Manny" and failing to disclose key exculpatory *Brady* material and pre-trial evidence, including their own misconduct, in knowing disregard of Mr. James's constitutional rights.

59.     There was not even arguable probable cause to arrest or prosecute Mr. James, and no reasonable officer would have believed there was.

60.     Defendants were obligated to, but did not, disclose *Brady* material.

61.     Defendants corruptly influenced V.V. in support of the prosecution.

62.     The prosecution ultimately terminated in Mr. James's favor when the Second Department unanimously overturned the conviction and dismissed the indictment.

63.     As a direct and proximate result of defendants' misconduct, Mr. James was wrongfully convicted and suffered the injuries and damages described above.

## SECOND CLAIM
### § 1983 Fabrication of Evidence, Due Process, Fair Trial and *Brady* Violations
(against all individual defendants)

64.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

- 13 -

65. Defendants deliberately fabricated evidence by orchestrating a suggestive show up identification, manipulating V.V., a faulty witness, and making false statements in police reports, including regarding plaintiff's description, the property in his possession and the circumstances of plaintiff's seizure and identification, as well as V.V.'s confidence and credibility.

66. As held by the Second Department, the show up violated plaintiff's due process rights.

67. The manipulation of V.V. and concealment of that misconduct violated plaintiff's right to a fair trial and defendants' *Brady* obligations.

68. Defendants intentionally orchestrated the misidentification of plaintiff by, *inter alia*, presenting him in handcuffs and surrounded by police officers, draping a striped shirt over him, and making suggestive statements to V.V., including that police had found the perpetrator.

69. Based on defendants' false assurances that V.V. had identified the perpetrator, V.V. misidentified plaintiff before the Grand Jury and at two trials.

70. Defendants were aware that V.V. was an incredible historian and that she only identified plaintiff because of their suggestive conduct, but proceeded to charge and convict plaintiff in violation of the constitution.

71.     Such fabrication of evidence violated Mr. James's clearly established constitutional rights to a fair trial and not to be deprived of liberty without due process of law.

72.     As a direct and proximate result of the individual defendants' misconduct, Mr. James was wrongfully convicted and suffered the injuries and damages described above.

## THIRD CLAIM
**§ 1983 Supervisory Liability**
(against Cameron and unidentified supervisors)

73.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

74.     The supervisory defendants, including Cameron, were personally involved in both the deprivation of Mr. James's constitutional rights and in condoning the misconduct of their subordinates.

75.     The supervisors were reckless in their failure to supervise the subordinate defendants, and either knew or should have known that defendant officers were maliciously prosecuting Mr. James, deliberately failing to investigate evidence pointing to other leads or suspects, fabricating identifications and inculpatory statements, suppressing exculpatory evidence, perjuring themselves as witnesses, and depriving Mr. James of due process of law.

76.     The failure of the supervisory defendants to train, supervise and discipline the subordinate defendants amounted to gross negligence, deliberate indifference or intentional misconduct, which directly caused the injuries and damages set forth above.

**FOURTH CLAIM**
**False Imprisonment and Malicious Prosecution under New York State Law**
(against City of Newburgh, by *respondeat superior*)

77.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

78.     Defendants, lacking probable cause, nonetheless intentionally, recklessly, and with malice, caused Mr. James to be arrested, prosecuted, and convicted of robbery and related charges.

79.     Mr. James was conscious of his confinement and did not consent to it.

80.     Defendants initiated and commenced the prosecution and took steps to ensure that it continued.

81.     Furthermore, the defendant officers intentionally withheld and misrepresented facts vitiating probable cause against Mr. James, including, *inter alia*, that they had manipulated V.V. into misidentifying plaintiff and that evidence proved plaintiff's innocence.

82.     As Mr. James has maintained from the outset, he is innocent of any wrongdoing and had no knowledge of or participation in the charged crimes.

83.    The prosecution finally terminated in Mr. James's favor when his conviction was vacated and the indictment against him dismissed.

84.    As a direct and proximate result of defendants' actions, Mr. James was wrongly arrested, prosecuted, convicted and imprisoned for almost ten years, and suffered other grievous and continuing damages and injuries set forth above.

## FIFTH CLAIM
### Intentional or Negligent Infliction of Emotional Distress
(against City of Newburgh, by *respondeat superior*)

85.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

86.    The deliberate conduct of the defendants in orchestrating the misidentification of Mr. James, their ensuing refusal to investigate the matter properly, and their cover-up of the truth, constitutes the intentional infliction of emotional distress.

87.    In the alternative, defendants' conduct in orchestrating the misidentification of Mr. James breached a duty of care owed to Mr. James as a citizen and as a criminal suspect, which unreasonably endangered his physical safety and caused him to fear for his own safety, constituting the negligent infliction of emotional distress.

88.    Defendants' conduct, falsely implicating Mr. James in the robbery

subjecting him to public stigma to this day notwithstanding the dismissal of charges against him, caused Mr. James to suffer ongoing, unimaginable emotional distress and traumatic psychological *sequelae*.

**SIXTH CLAIM**
**Unlawful Pre-Trial Detention**
**In Violation of the 4th Amendment and**
***Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007)**
(against all individual defendants)

89.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

90.     Defendants' failure to disclose exculpatory material, including, *inter alia*, defendants' manipulation of V.V., V.V.'s obvious lack of credibility and the profound discrepancies between plaintiff's appearance and V.V.'s description of "Manny," resulted in a pre-trial deprivation of plaintiff's liberty in violation of the Fourth Amendment.

91.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**SEVENTH CLAIM**
**§ 1983 Conspiracy**
(against all individual defendants)

92.     Plaintiff repeats and realleges each and every allegation as if fully set forth

- 18 -

herein.

93.     Pursuant to a conspiracy to cover up their misconduct, defendants intentionally, knowingly and purposefully provided false statement and prepared false reports mischaracterizing the circumstances of the show up and the credibility of V.V.

94.     The individual defendants took several overt acts to cover up their misconduct, including the suppression of exculpatory evidence and fabrication of inculpatory evidence.

95.     These acts resulted in a violation of plaintiff's rights to due process and to be free from unlawful search and seizure. Mr. James was wrongfully convicted and spent almost a decade in prison as a consequence.

96.     Accordingly, defendants violated the Fourth, Fifth, Sixth and Fourteenth Amendments because they conspired to deprive Mr. James of his rights.

97.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
**Failure to Intervene**
(against all individual defendants)

98.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

99.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

100.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:      February 25, 2021
            New York, New York

                    Elefterakis, Elefterakis & Panek

                    _____
                    Gabriel P. Harvis
                    Baree N. Fett
                    80 Pine Street, 38th Floor
                    New York, New York 10005
                    (212) 532-1116
                    gharvis@eeplaw.com

                    *Attorneys for plaintiff*

- 21 -