UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KENYATTA JAMES,

                                                  Index No: 21-cv-1673 (CS)

                          Plaintiff,

        -against-

Police Officer MYRA RUDE, Detective
AARON WEAVER, and Police Officer
JOHN MAGUIRE,

                         Defendants.

-------------------------------------------------------------------X

**Memorandum of Law in Support of Defendants' Motions *in Limine***

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iv

ARGUMENT .............................................................................................................................. 1

    I.    Plaintiff should be precluded from offering the Appellate Division's decisions reversing Plaintiff's criminal conviction into evidence or discussing the reasoning underlying these decisions with the jury. ........................................................................................................ 1

    II.    Plaintiff should be precluded from asking the defendants questions regarding their understanding of the reasons Plaintiff's convictions were reversed. .......................................... 2

    III.    Plaintiff should be precluded from referencing the federal excessive force lawsuit filed against Officer Maguire by Steven Tieman. ............................................................................ 3

    IV.    Plaintiff should be precluded from referencing the lawsuit filed against the City of Newburgh by the estate of Nathaniel Cobbs Jr. .......................................................................... 4

    V.    Plaintiff should be precluded from arguing to the jury that the police should have employed different or additional investigative measures prior to arresting and charging him. .................. 4

    VI.    Plaintiff's criminal defense attorney's statement and his own admissions that he owned the Sawzall blade are admissible. ..................................................................................... 5

    VII.    Plaintiff should be precluded from offering evidence that he received an award from the New York State Court of Claims following the vacatur of his criminal conviction.................. 6

    VIII.    ADA Kolek should be permitted to testify regarding her communication with defendants and the evidence that was disclosed to her by the police. ....................................... 7

    IX.    Plaintiff's criminal convictions pertaining to his use of a makeshift knife in prison are admissible. ................................................................................................................. 9

    X.    Plaintiff should be precluded from arguing that he was racially profiled........................ 10

    XI.    Plaintiff should be prohibited from arguing that he sustained damages in the form of post-traumatic stress disorder as a result of his arrest and prosecution. ................................... 10

    XII.    Plaintiff's expert economist's testimony and report regarding Plaintiff's alleged lost earnings should be precluded from being offered into evidence at trial.................................. 11

    XIII.    Plaintiff's lost earnings claim should be dismissed because he has not provided any evidentiary support for such a claim. ...................................................................................... 14

    XIV.    Dr. Jennifer Dysart should be precluded from testifying at trial because her report and anticipated testimony are irrelevant and highly prejudicial. .................................................... 15

    XV.    Plaintiff should be precluded from arguing to the jury that the description provided by Ms. Villamore did not provide the police with probable cause to arrest and prosecute him for robbery. ...................................................................................................................... 18

    XVI.    Plaintiff's prior use of aliases is admissible.......................................................... 18

    XVII.    Plaintiff should be precluded from offering evidence related to being placed in solitary confinement and being stabbed during his incarceration following the prosecution at issue in this case pursuant to the Court's Order partially granting the defendants' motion to dismiss…19

ii

XVIII.    Plaintiff's prior incarcerations are admissible because they are relevant to his damages claims…… ........................................................................................................................... 19

XIX.    Defendants should be permitted to argue that Plaintiff in fact committed the crimes he was accused of. ........................................................................................................................ 20

XX.    Plaintiff should be precluded from arguing that it was improper for Detective Weaver and Officer Flaherty to hold Plaintiff's shirt up to him during Villamore's showup identification.. ............................................................................................................................ 22

XXI.    Plaintiff should be precluded from presenting evidence or cross-examining Officer Maguire about the unadjudicated New York Civil Service Law § 75 charges brought against him by the City of Newburgh. ...................................................................................................... 22

XXII.    Plaintiff's extensive history of prior criminal convictions should be admitted for impeachment purposes pursuant to Fed. R. Civ. P. 609(b)(1). .................................................. 24

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Alla v. Verkay, 979 F. Supp. 2d 349 (E.D.N.Y. 2013)................................................................ 15

Antonetti v. City of New York, 422 F. Supp. 3d 668 (E.D.N.Y. 2017).................................... 5

Bear, Stearns & Co., Inc., et al. v. 1109580 Ontario. Inc., 409 F.3d 87 (2d Cir. 2005) ................ 7

Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 141 F. Supp. 2d 320 (E.D.N.Y.2001)
.......................................................................................................................................... 1, 2

Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18 (2d Cir. 1996).......................................... 12, 14

Braccia v. D'Blass Corp., No. 08-CV-08927 (LTS) (KNF), 2011 WL 2848146 (S.D.N.Y. June 13,
2011) ................................................................................................................................ 15

Brisco v. Ercole, 565 F.3d 80 (2d Cir. 2009)............................................................................. 22

Brown v. City of New York, 60 N.Y.2d 897 (1983) ...................................................................... 2

Bryant v. Bennett, No. 00-CV-5692 (AGS) (AJP), 2001 WL 286776 (S.D.N.Y. Mar. 2, 2001)... 9

Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010).................................................. 2, 7, 8

Carmichael v. City of New York, 34 F. Supp. 3d 252 (E.D.N.Y. 2014)................................... 16

Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016) .................................................. 6

Chisholm v. Memorial Sloan-Kettering Cancer Ctr., 824 F. Supp. 2d 573 (S.D.N.Y. 2011) ...... 12

Collins v. City of New York, 923 F. Supp. 2d 462 (E.D.N.Y. 2013)........................................... 3

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)............................................. 11, 16, 17

Dershowitz v. U.S., No. 12-CV-08634 (SN), 2015 WL 1573321 (S.D.N.Y. Apr. 8, 2015) ........ 12

Dixon v. Reid, No. 23-CV-09878 (JAV), 2025 WL 2417299 (S.D.N.Y. Aug. 21, 2025) ........... 12

Dowling v. United States, 493 U.S. 342 (1990) ........................................................................... 9

Dukes v. City of Albany, 492 F. Supp. 3d 4 (N.D.N.Y. 2020)................................................... 7

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ...................................................................... 5

Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48 (2d Cir. 2002) ............... 16

Ganek v. Leibowitz, 874 F.3d 73 (2d Cir. 2017)........................................................................ 21

Gorbea v. Verizon New York, Inc., No. 11-CV-3758 (KAM) (LB), 2014 WL 2916964 (E.D.N.Y.
June 25, 2014)..................................................................................................................... 18

Grega v. Pettengill, 123 F. Supp. 3d 517 (D. Vt. 2015) ............................................................... 5

Gumbs v. Int'l Harvester, Inc., 718 F.2d 88 (3rd Cir. 1983) ..................................................... 13

Hamza v. Saks Fifth Ave., Inc., No. 07-CV-5974 (FPS), 2011 WL 6187078 (S.D.N.Y. Dec. 5,
2011) ................................................................................................................................. 18

Hester v. BIC Corp., 225 F.3d 178 (2d Cir. 2000) ..................................................................... 10

Hygh v. Jacobs, 961 F.2d 359 (2d Cir. 1992).............................................................................. 3

Hynes v. Coughlin, 79 F.3d 285 (2d Cir. 1996) ......................................................................... 23

In re Refco Inc. Securities Litigation, Nos. 07-MD-1902 (JSR), 08-CV-3065 (JSR), 08-CV-3086
(JSR), 2012 WL 7007795 (S.D.N.Y. Nov. 29, 2012)......................................................... 17

Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529 (E.D.N.Y. 2011)...................................... 19, 25

Johnson v. Ruiz, No. 3:11-CV-542 (JCH), 2012 WL 90159 (D. Conn. Jan. 10, 2012) ................ 5

Jovanovic v. City of New York, 486 F. App'x 149 (2d. Cir. 2012) ............................................ 20

Juan C. v. Cortines, 89 N.Y.2d 659 (1997).................................................................................. 1

Lyda v. United States, 321 F.2d 788 (9th Cir. 1963)................................................................. 19

Manbro Energy Corp. v. Chatterjee Advisors, LLC, No. 20-CV-3773 (LGS), 2023 WL 2563054
(S.D.N.Y. Mar. 17, 2023) ................................................................................................. 24

Matthews v. Hewlett-Packard Co., No. 15-CV-3922 (DAB), 2017 WL 6804075 (S.D.N.Y. Dec.
22, 2017) ........................................................................................................................... 11

Minnesota v. Murphy, 465 U.S. 420 (1984) ............................................................... 6

Monegro v. Greiner, No. 03-CV-2735 (NRB), 2004 WL 187129 (S.D.N.Y. Jan. 28, 2004)....... 19

Moody v. CSX Transp., Inc., 271 F. Supp. 3d 410 (W.D.N.Y. 2017) .......................................... 17

Moroughan v. County of Suffolk, 514 F. Supp. 3d 479 (E.D.N.Y. 2021).................................... 21

Nipper v. Snipes, 7 F.3d 415 (4th Cir. 1993).............................................................................. 1

Nnodimele v Derienzo, No. 13-CV-3461 (ARR) (RLM), 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016) ..................................................................................................................................... 8

Nnodimele v. Derienzo, No. 13-CV-3461 (ARR) (RLM), 2016 WL 3561708 (E.D.N.Y. June 27, 2016) ................................................................................................................................... 20

Parish v. City of Elkhart, 702 F.3d 997 (7th Cir. 2012) ........................................................... 20

People v. Brisco, 99 N.Y.2d 596 (2003)..................................................................................... 22

People v. Dunbar, 104 A.D.3d 198 (2d Dept. 2013) ................................................................. 22

Pogil v. KPMG L.L.P., No. 21-CV-7628 (LTS) (BCM), 2024 WL 1208909 (S.D.N.Y. Mar. 21, 2024) ........................................................................................................................... 12, 14

Restivo v. Hessemann, 846 F.3d 547 (2d Cir. 2017)................................................................... 6

Ricciuti v. New York City Transit Auth., 70 F. Supp. 2d 300 (S.D.N.Y. 1999)........................ 21

Roguz v. Walsh, No. 09-1052 (TLM), 2013 WL 1498126 (D. Conn. Apr. 5, 2013).................... 2

Roland v. City of New York, No. 20-CV-05392 (TMR), 2024 WL 2832691 (S.D.N.Y. June 3, 2024) ................................................................................................................................... 21

Sakoc v. Carlson, No. 5:11-CV-290 (CR), 2014 WL 12717389 (D. Vt. Aug. 26, 2014) ........... 17

Senior v. Eihab Human Servs., Inc., No. 15-CV-1009 (ENV) (PK), 2023 WL 7134076 (E.D.N.Y. Apr. 19, 2023) ..................................................................................................................... 24

Sterlin v. City of New York, No. 11-CV-0715 (JPO), 2014 WL 2560595 (S.D.N.Y. June 6, 2014) ............................................................................................................................................. 10

Stokes v. City of New York, No. 05-CV-0007 (JFB) (MDG), 2007 WL 1300983 (E.D.N.Y. May 3, 2007) ............................................................................................................................... 5

Tardif v. City of New York, 344 F. Supp. 3d 579 (S.D.N.Y. 2018) ........................................... 11

Thompson v. Yelich, No. 09-CV-5039 (KAM) (LB), 2011 WL 9523319 (E.D.N.Y. May 31, 2011) ............................................................................................................................................. 19

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105 (2d Cir. 1997)...................................................................................................... 15

Trs. of Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890 (3d Cir. 1987)..................................... 1

U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275 (11th Cir. 2001)................................................. 1

United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 3647686 (E.D.N.Y. July 1, 2016) ... 23

United States v. Brown, 606 F. Supp. 2d 306 (E.D.N.Y. 2009)................................................. 25

United States v. Clanton, 769 F. Supp. 3d 147 (E.D.N.Y. 2024) .............................................. 23

United States v. Jackson, No. 19-CR-356 (ARR), 2020 WL 6558215 (E.D.N.Y. Nov. 9, 2020).. 4

United States v. Lawes, 292 F.3d 123 (2d Cir. 2002)................................................................ 24

United States v. Leeper, 577 F. Supp. 3d 48 (N.D.N.Y. 2021) ................................................... 6

United States v. Mahone, 537 F.2d 922 (7th Cir. 1976)............................................................ 25

United States v. Motovich, No. 21-CR-497 (WFK), 2024 WL 3303723 (E.D.N.Y. July 2, 2024) ............................................................................................................................................. 24

United States v. Muhammad, 632 F. App'x 22 (2d Cir. 2016) ..................................................... 6

United States v. Murgas, 967 F. Supp. 695 (N.D.N.Y. 1997) ................................................... 19

United States v. Pipola, 83 F.3d 556 (2d Cir. 1996)................................................................... 9

United States v. Stewart, 433 F.3d 273 (2d Cir. 2006).............................................................. 17

Walker v. City of New York, No. 11-CV-00314 (CBA) (JMA), 2014 WL 12652345 (E.D.N.Y. Sept. 3, 2014) ..................................................................................................................... 21

Walker v. City of New York, No. 12-CV-5902 (PAC), 2014 WL 1259618 (S.D.N.Y. Mar. 18, 2014) ........................................................................................................................................ 3

Warney v. City of Rochester, No. 07-CV-6246 (BMC), 2011 WL 13300297 (W.D.N.Y. Aug. 31, 2011) ...................................................................................................................................... 20

Williams v. McCarthy, No. 05-CV-10230 (SAS), 2007 WL 3125314 (S.D.N.Y. Oct. 25, 2007) ............................................................................................................................................... .19

**Statutes**

Fed. R. Evid. 403 ................................................................................................................ 16, 17

Fed. R. Evid. 404(b)(2) ............................................................................................................. 9

Fed. R. Evid. 608(b) ................................................................................................................ 23

Fed. R. Evid. 801(d)(2)(A) ........................................................................................................ 6

Fed. R. Evid. 801(d)(2)(D) ........................................................................................................ 6

## ARGUMENT

**I.  Plaintiff should be precluded from offering the Appellate Division's decisions reversing Plaintiff's criminal conviction into evidence or discussing the reasoning underlying these decisions with the jury.**

Plaintiff should be precluded from offering the New York Appellate Division opinions vacating his criminal convictions into evidence for several reasons.  First, these opinions are inadmissible hearsay.  Second, they are more prejudicial than probative because they are not binding on defendants and also concern state law legal matters not before the jury in the instant proceeding.  (Ex. A; Ex. B). The appellate division opinions in question are inadmissible hearsay pursuant to Fed. R. Civ. P. 803. See U.S. Steel, LLC, v. Tieco, Inc., 261 F.3d 1275, 1286-87 (11th Cir.  2001)  (state court opinion dismissing  indictments  was inadmissible hearsay); Nipper  v. Snipes, 7 F.3d 415, 416–18 (4th Cir. 1993) (concluding  a state court opinion was hearsay and was inadmissible); Trs.  of  Univ.  of  Pa.  v.  Lexington  Ins.  Co., 815  F.2d  890,  905  (3d  Cir. 1987) (statements by state court judge were inadmissible hearsay); Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 141 F. Supp. 2d 320, 323 (E.D.N.Y.2001) ("Judicial findings in other cases proffered as evidence are generally characterized as inadmissable [sic] hearsay.").

Furthermore, the Appellate Division holdings in the underlying criminal proceeding have no collateral estoppel effect on this instant proceeding because the defendants were not parties to that proceeding.  In New York, collateral estoppel has two essential elements.  As an initial matter, "the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."  Juan C. v. Cortines, 89 N.Y.2d 659, 667 (1997).  Because the defendants were not represented parties in the criminal action, legal determinations in that action do not bind them in a subsequent civil case against them.  See Jenkins v. City of New York, 478 F.3d 76, 85-86 (2d Cir. 2007) (holding the district court erred in not

precluding the state court's determination that officers did not have probable cause to arrest plaintiff in subsequent § 1983 action because state court criminal action was not binding on officers); see also Brown v. City of New York, 60 N.Y.2d 897, 898-99 (1983) ("Identity of parties, an essential element for application of the doctrine of issue preclusion or collateral estoppel, was lacking here so that the determination made in the criminal case on the issue of the unlawfulness of plaintiff's arrest could not be held to bar the city from contesting the issue in the civil action. The city and the District Attorney are separate entities…").

Finally, the Appellate Division opinions should be precluded under Fed. R. Evid. 403 as they have no relevance to the remaining legal issues before the jury – the alleged fabrication of evidence and Brady violations that survived summary judgment – and are likely to cause confusion because they turn on issues of whether the showup identification of Plaintiff was suggestive under state law. See Blue Cross, 141 F. Supp. 2d at 325 ("…[A] trial court should prevent outside judicial decisions from clouding jury findings…"). Accordingly, it is respectfully submitted that the Court should preclude Plaintiff from offering the Appellate Division opinions into evidence.

## II.    Plaintiff should be precluded from asking the defendants questions regarding their understanding of the reasons Plaintiff's convictions were reversed.

In a similar vein, Plaintiff should be precluded from adducing testimony from the officer defendants regarding legal conclusions, including their understanding of the reasons, that Plaintiff's conviction was reversed. Defendants' testimony regarding their lay understanding of the appellate decision's reasoning is not relevant and would violate the prohibition on soliciting testimony concerning legal conclusions and standards. See Roguz v. Walsh, No. 09-1052 (TLM), 2013 WL 1498126, at *9 (D. Conn. Apr. 5, 2013) (internal quotation marks omitted) (quoting Cameron v. City of New York, 598 F.3d 50, 62 (2d Cir. 2010)) ("Witnesses may not present testimony in the form of legal conclusions."). "This rule applies to both expert and lay

witnesses, and prohibits explicit legal conclusions and any testimony that implicitly communicates a legal standard to the jury." Id. (internal citations omitted) (citing Hygh v. Jacobs, 961 F.2d 359, 364 (2d Cir. 1992)).

### III.    Plaintiff should be precluded from referencing the federal excessive force lawsuit filed against Officer Maguire by Steven Tieman.

Officer Maguire was a named defendant in a 2013 lawsuit filed in this District by plaintiff Steven Tieman alleging that Maguire's use of his police dog during Tieman's arrest constituted excessive force.  (No. 13-cv-4178 Dkt. No. 54).  This action was dismissed with prejudice pursuant to a settlement agreement prior to trial. (No. 13-cv-4178, at Dkt. No. 118).  Plaintiff should be precluded from referencing the allegations in this lawsuit pursuant to Fed. R. Evid. 401, 403, 404(a)(1), and 802.

The allegations in the Tieman lawsuit are not relevant and are substantially more prejudicial than probative as they involve conduct – excessive force involving a police dog – that is not similar to the conduct alleged in this case – fabrication of evidence and a *Brady* violation. Evidence that Officer Maguire was alleged to have used excessive force on another is also character evidence precluded by Rule 404(a) and none of the 404(b)(2) exceptions apply because the allegations in the two lawsuits are completely different.  The allegations in the Tieman lawsuit are also hearsay and Plaintiff has identified no witness who can testify regarding their veracity. Finally, any reference to these allegations should be precluded as they were never adjudicated. See Walker v. City of New York, No. 12-CV-5902 (PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (refusing to consider evidence of other lawsuits where "none result[ed] in an adjudication of liability."); see also Collins v. City of New York, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because

they either were different from the misconduct alleged in the complaint, post-dated the alleged misconduct in the case at hand, or "involve[d] something less [settlements without admissions of liability and unproven allegations] than evidence of misconduct"); United States v. Jackson, No. 19-CR-356 (ARR), 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (finding that because "[a]ll of the civil lawsuits brought against the government's witnesses are either currently pending or have already ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court," there was "no reason to believe that the underlying files are likely to contain material that is relevant to the credibility of the witnesses").

**IV.** **Plaintiff should be precluded from referencing the lawsuit filed against the City of Newburgh by the estate of Nathaniel Cobbs Jr.**

For substantially the same reasons, Plaintiff should be precluded from referencing the allegations in the federal lawsuit filed in this District by the estate of Nathanel Cobbs Jr. concerning his 2007 death. In that case, the plaintiff alleged that Cobbs was killed by a taser and/or a police dog deployed by City of Newburgh officers after the police responded to a domestic disturbance. (No. 08-cv-8517, at Dkt. No. 1). The case settled prior to trial. (No. 08-cv-8517, at Dkt. No. 100). None of the officer defendants in the case at bar were parties in the Cobbs action. Accordingly, the Cobbs action should be precluded for the same reasons as the Tieman action.

Moreover, Plaintiff should further be precluded from referencing any other lawsuits against these defendants, the City of Newburgh, or any other City of Newburgh police officer for these same reasons as well.

**V.** **Plaintiff should be precluded from arguing to the jury that the police should have employed different or additional investigative measures prior to arresting and charging him.**

Plaintiff should be precluded from arguing to the jury that the police should have taken additional steps in their investigation prior to his arrest. Such an argument is not relevant to the

4

Brady and fabrication of evidence claims that remain to be tried as these claims depend on the actual evidence provided to prosecutors and not hypothetical evidence that could have been collected. Furthermore, individuals have no constitutional right to have the police employ specific investigatory measures as a matter of law. See Grega v. Pettengill, 123 F. Supp. 3d 517, 533-37 (D. Vt. 2015) (dismissing cause of action alleging that plaintiff's conviction was caused by police failure to preserve evidence when investigating crime scene); Antonetti v. City of New York, 422 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) ("A police officer's failure to pursue a particular investigative path is not a constitutional violation."); see also Johnson v. Ruiz, No. 3:11-CV-542 (JCH), 2012 WL 90159, at *4 (D. Conn. Jan. 10, 2012) (holding that plaintiff had "no constitutionally protected right to a proper investigation" of his claims); Stokes v. City of New York, No. 05-CV-0007 (JFB) (MDG), 2007 WL 1300983, at *6 (E.D.N.Y. May 3, 2007) ("[I]t is well-settled that there is no independent claim for a police officer's purported failure to investigate…."). Accordingly, any argument that the police should have taken different measures in their investigation would be inconsistent with the Court's determination that there was probable cause for Plaintiff's arrest and prosecution. (Ex. C). Once probable cause is established, officers have no duty to conduct additional investigatory measures prior to making an arrest or initiating a prosecution. Fabrikant v. French, 691 F.3d 193, 214-15 (2d Cir. 2012).

## VI.    **Plaintiff's criminal defense attorney's statement and his own admissions that he owned the Sawzall blade are admissible.**

Plaintiff's multiple statements that he owned the Sawzall blade that he now claims that the defendants fabricated are not hearsay pursuant to Fed. R. Evid. 801(d). Plaintiff's criminal defense attorney's admission to the jury during Plaintiff's criminal trial that Plaintiff owned the Sawzall blade qualifies as a statement of a party agent under Fed. R. Evid 801(d)(2)(D), which provides that statements are not hearsay if offered against an opposing party where the statement **"was made**

by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).  Here, Plaintiff's criminal defense attorney was acting as his agent during his criminal trial and statements the attorney made to the jury during that trial were made in the scope of his duties as Plaintiff's attorney.  (Ex. D, at 461:12; Ex. E, at 62:18-63:3); see Carter v. HealthPort Techs., LLC, 822 F.3d 47, 58 (2d Cir. 2016) ("[T]he relationship between a lawyer and client is one of agent and principal.") (internal citations and quotations omitted); United States v. Leeper, 577 F. Supp. 3d 48, 69 (N.D.N.Y. 2021) (holding that statements made by a party's attorney are not hearsay).  Accordingly, they are admissible against Plaintiff.

Plaintiff's statement at his sentencing hearing and to his probation officer that he owned the blade is admissible under Fed. R. Evid. 801(d)(2)(A), which provides that a statement is not hearsay when the statement is "made by the party in an individual or representative capacity" and is offered against the party.  Fed. R. Evid. 801(d)(2)(A); see Minnesota v. Murphy, 465 U.S. 420, 426-29 (1984) (statement made to probation officer admissible in subsequent criminal proceeding); see also United States v. Muhammad, 632 F. App'x 22, 23 (2d Cir. 2016) (summary order) (holding that court properly admitted evidence regarding admission made by defendant to his probation officer); (Ex. F, at 8:7-13; Ex. G).

## VII.    **Plaintiff should be precluded from offering evidence that he received an award from the New York State Court of Claims following the vacatur of his criminal conviction.**

Plaintiff's award from the State of New York pursuant to New York Court of Claims Act § 8-b is not admissible in this action.  This statute authorizes the State of New York to award money to individuals who obtain the reversal of their criminal convictions without requiring a showing of fault against an individual defendant.  See Restivo v. Hessemann, 846 F.3d 547, 583 (2d Cir. 2017) (noting § 8-b's lack of fault requirement).  Thus, permitting evidence of the § 8-b award from the state could mislead the jury into believing that another court had made a

determination on the issues to be tried in this case when the award was premised on a no-fault standard in a proceeding in which the defendants were not eligible to participate. Evidence pertaining to the proceeding is therefore not probative and highly prejudicial and should therefore be precluded pursuant to Fed. R. Evid. 403. Plaintiff's court of claims proceeding also has no collateral estoppel effect on this proceeding because the defendants were not parties to it. See Dukes v. City of Albany, 492 F. Supp. 3d 4, 12 (N.D.N.Y. 2020) ("In fact, individual defendants cannot even be sued in the New York Court of Claims…"). Collateral estoppel may bar re-litigation of an issue if: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Bear, Stearns & Co., Inc., et al. v. 1109580 Ontario. Inc., 409 F.3d 87, 91 (2d Cir. 2005). Here, collateral estoppel does not apply because the defendants were not parties to the court of claims action and therefore had no opportunity to litigate whatever issues formed the basis of the court's award.

## VIII.    ADA Kolek should be permitted to testify regarding her communication with defendants and the evidence that was disclosed to her by the police.

Assistant Orange County District Attorney Kerry Kolek prosecuted the underlying criminal case against Plaintiff in state court. ADA Kolek should be permitted to testify regarding her communications with the defendants and whether the evidence that was purportedly fabricated in this case affected her decision to prosecute. Officer Kolek's recollections of her conversations with the defendants are directly relevant to the issue of whether she relied on fabricated evidence when deciding to prosecute Plaintiff and whether any fabricated evidence caused Plaintiff damages. In Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010), the Second Circuit discussed matters which district attorneys in an underlying criminal prosecution may and may not

testify about in § 1983 actions.  In <u>Cameron</u>, the Second Circuit remanded a defense verdict in a false arrest case on appeal because the defendants impermissibly introduced testimony from the assistant district attorneys regarding their opinions on the defendant officers' credibility and their opinion on whether there was probable cause to arrest and prosecute the underlying criminal case against the plaintiffs.  <u>Id.</u> at 62-64.  Crucially, the Court observed that:

> On the other hand, if a witness's own *belief* as to probable cause is relevant to the outcome of a case (for example, where a police officer is sued for false arrest, and claims that she believed she possessed probable cause to arrest), that witness's testimony about her own subjective belief may be admissible.

<u>Id.</u> at 62 (alterations in original).  Such is the case here.  Plaintiff has to show that the purportedly fabricated evidence caused him damages.  In discussing the consequences of fabricated evidence pre-criminal trial, a court reasoned that it could cause the following injuries:

> Fabricated evidence, notwithstanding its ultimate inadmissibility at trial, can influence many critical aspects of a prosecution, including a prosecutor's assessment of the reliability of other evidence, a prosecutor's initial decision to pursue a case, a magistrate's decision to grant bail, a grand jury's decision to indict, and a judge's rulings on pre-trial motions.

<u>Nnodimele v Derienzo</u>, No. 13-CV-3461 (ARR) (RLM), 2016 WL 337751, at *13 (E.D.N.Y. Jan. 27, 2016).  Thus, the impact of the alleged fabricated evidence on the prosecutor's state of mind and the legal conclusions she drew at the time of the relevant decisions is highly relevant to the issue of whether or not the alleged fabrication caused Plaintiff any damages.  Furthermore, ADA Kolek should be allowed to testify how, if at all, her communications with the police officers and/or the claimed fabricated evidence would have affected her decision-making whether or not to proceed with the prosecution.  Accordingly, ADA Kolek's testimony on these issues is relevant and admissible.

## IX.    <u>Plaintiff's criminal convictions pertaining to his use of a makeshift knife in prison are admissible.</u>

In 2002, Plaintiff was convicted following a trial of violating N.Y. Penal Law § 120.05(2) [attempted assault in the second degree with a weapon or dangerous instrument instrument] and N.Y. Penal Law 205.25(2) [knowingly making or possessing dangerous contraband in prison in the first degree] for an incident in which he attempted to attack an individual with a homemade shank while he was incarcerated.  (Ex. H).  The use of this conviction should be permitted under Fed. R. Evid. 404(b)(2), which permits evidence of other crimes to prove , such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."    Fed. R. Evid. 404(b)(2). The Second Circuit has adopted an "inclusionary interpretation" of Rule 404(b) that "…allows evidence of other wrongs to be admitted so long as it is relevant and it is not offered to prove criminal propensity."  <u>United States v. Pipola</u>, 83 F.3d 556, 565 (2d Cir. 1996).

Because Plaintiff's prior conviction involved attempted assault with a makeshift knife and he was accused of using a Sawzall blade – a type of makeshift knife –by Ms. Villamore in the case at bar, his prior conviction is not precluded by Rule 404(a) because it is relevant to identity, knowledge, modus operandi, and the absence of mistake.   Therefore, this conviction should be admitted into evidence.  See <u>Dowling v. United States</u>, 493 U.S. 342, 353 (1990) (ruling that evidence of defendant's prior robbery of a home was "circumstantially valuable" in proving he robbed a bank where on both occasions he wore a ski mask and carried a small pistol); <u>Bryant v. Bennett</u>, No. 00-CV-5692 (AGS) (AJP), 2001 WL 286776, at *4-6 (S.D.N.Y. Mar. 2, 2001) (report and recommendation) (admitting other alleged robberies involving the use of a knife as evidence of modus operandi evidence under Rule 404(b) where defendant was accused of committing a robbery using a knife).

**X.** **Plaintiff should be precluded from arguing that he was racially profiled.**

Plaintiff should be precluded from arguing that the defendants' actions were motivated by race because this has the potential to prejudice the jury since the claims to be tried do not involve race discrimination or the Equal Protection Clause. See Hayes v. New York City Police Dept., 212 F. App'x 60, 62 (2d Cir. 2007) (summary order) (improper motive irrelevant); Smith v. County of Nassau, 643 F. App'x 28, 30 (2d Cir. 2016) (summary order) (subjective reason for arrest irrelevant); Sterlin v. City of New York, No. 11-CV-0715 (JPO), 2014 WL 2560595, at *4 (S.D.N.Y. June 6, 2014) (subjective intent not relevant to assault and battery claim). Moreover, Plaintiff adduced no evidence whatsoever that the defendants' actions were motivated by race. Subjective feelings of discrimination are not evidence. See Hester v. BIC Corp., 225 F.3d 178, 184 (2d Cir. 2000) (testimony of co-workers that decision-maker was motivated by race discrimination was inadmissible because it was based on their "subjective impressions" and witnesses had no personal knowledge of decision-making process or plaintiff's performance of her job duties). Furthermore, as discussed in the Court's summary judgment opinion, the 911 call makes clear that the police were looking for a light skinned African American male because that is how Villamore described the individual who robbed her. (Ex. C). As such, the police were obligated to consider Plaintiff's race when identifying him as a suspect using Villamore's description. Thus, Plaintiff should be precluded from arguing that he was racially profiled pursuant to Fed. R. Evid. 401 and 403.

**XI.** **Plaintiff should be prohibited from arguing that he sustained damages in the form of post-traumatic stress disorder as a result of his arrest and prosecution.**

Plaintiff retained Dr. Michael Fraser, a clinical psychologist, as an expert in this matter. He purportedly diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") based on a single three-hour interview in April of 2023. (Ex. I, at 39:8-43:25; Ex. J). However, Dr. Fraser could not causally relate his PTSD diagnosis to Plaintiff's arrest and prosecution for the robbery at issue

in the case at bar.  He testified that Plaintiff's diagnosis "could not be related to one specific trauma" and identified a number of other traumatic circumstances that could have caused this diagnosis.  (Id. at 53:16-56:16).   He further admitted that he never reviewed any psychological records prior to the arrest at issue in this case and does not know if Plaintiff was ever diagnosed with any mental illness prior to that arrest.  (Id. at 56:18-57:12).  When asked "if there was any way for you to know how much his arrest and imprisonment following the July of 2010 event affected [Plaintiff's] mental health?"  He answered "no."  (Id. at 57:8-12).  Dr. Fraser's inability to causally relate his diagnosis to the arrest and imprisonment at issue in this litigation renders his testimony unreliable under Fed. R. Evid. 702 and the Supreme Court's decisions in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).   See Tardif v. City of New York, 344 F. Supp. 3d 579, 601 (S.D.N.Y. 2018) (excluding expert's testimony that plaintiff's PTSD was caused by defendant's conduct under Rule 702 where expert failed to adequately account for other "alternative explanations" and plaintiff had "experienced a great deal of traumatic experiences throughout her life"); see also Matthews v. Hewlett-Packard Co., No. 15-CV-3922 (DAB), 2017 WL 6804075, at *5 (S.D.N.Y. Dec. 22, 2017) ("Because Dr. Bryant has not performed a differential diagnosis, is not Plaintiff's treating physician, and has not sufficiently explained the methodology underlying his opinion, his expert testimony on causation is not adequately reliable to meet the requirements of Daubert, and will be excluded.").  Given his admission that he cannot causally relate his diagnosis of Plaintiff to the arrest and prosecution at issue in this case, Dr. Fraser's testimony should be precluded as unreliable.

## XII.    Plaintiff's expert economist's testimony and report regarding Plaintiff's alleged lost earnings should be precluded from being offered into evidence at trial.

It is anticipated that the plaintiff will attempt to proffer the expert report of his purported expert economist, Kristin Kucsma.  In addition, it also expected that plaintiff will attempt to

proffers Kucsma's testimony concerning plaintiff's alleged lost earnings claim.  However, Kucsma should be precluded from testifying at trial – and her report should be precluded as well – because there is simply no earnings history whatsoever to support plaintiff's lost earnings claim and her opinion is entirely speculative as it is based on unrealistic assumptions as Plaintiff, who was in his thirties at the time of his arrest, has presented no evidence of any employment history in his life beyond his testimony that he worked a minimum wage job for several months prior to his arrest.

In cases where there is a claim of lost earnings are at issue, it is well settled that an expert's testimony must be excluded if it is based on unrealistic assumptions.  See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21-22 (2d Cir. 1996) (holding that the lower court abused its discretion in allowing plaintiff's expert to testify regarding plaintiff's "past and future lost earnings capacity based on unrealistic and speculative assumption[s]…"); see also Pogil v. KPMG L.L.P., No. 21-CV-7628 (LTS) (BCM), 2024 WL 1208909, at *13 (S.D.N.Y. Mar. 21, 2024) (holding that plaintiff's expert's projection as to plaintiff's alleged loss earnings was "speculative, conjectural, and relies upon 'unrealistic assumptions'"); Dershowitz v. U.S., No. 12-CV-08634 (SN), 2015 WL 1573321, at *33 (S.D.N.Y. Apr. 8, 2015) (finding that the expert's conclusion concerning plaintiff's lost earnings claims was "far too speculative"); Chisholm v. Memorial Sloan-Kettering Cancer Ctr., 824 F. Supp. 2d 573, 578 (S.D.N.Y. 2011) (holding that plaintiff's proposed method for calculating lost pension benefits based upon a 2006 document that assumes employment through 2020, was too speculative).

Plainly, "[t]he benchmark for any such calculations should be the income earned by the plaintiff in prior years, including median income in the years immediately prior to plaintiff's departure from employment."  See Dixon v. Reid, No. 23-CV-09878 (JAV), 2025 WL 2417299, at *5 (S.D.N.Y. Aug. 21, 2025) (precluding plaintiff's expert from testifying because his opinions,

*inter alia*, did not purport to calculate plaintiff's lost earnings based on her actual compensation and were based on inherently speculative assumptions, all of which were too attenuated and lacked reliability to be submitted to the jury).  In other words, if the expert testimony regarding lost earnings is not based on a sufficient factual foundation, then it should be excluded.  See Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 98 (3rd Cir. 1983).

Here, Kucsma makes several assumptions in her report that are entirely speculative, unrealistic, and devoid of any factual foundation.  She claims she assumes that absent plaintiff's alleged wrongful incarceration, he would have continued to work in his pre-incarceration employment until approximately 61.5 years old.  (Ex. K, at pp. 3-5)  She also assumed that his "earnings would have increased to the median earnings of full-time working males with an education level of none through GED, employed as Laborers and Freight, Stock, and Material Movers, Hand."  (Id. at p. 5)  She further assumed that he would have received various fringe benefits over that time as well.  (Id.).  Ultimately, Kucsma concluded that plaintiff somehow sustained a total economic loss of $983,831.  (Id. at p. 12).

However, Kucsma admitted during her deposition that she did not review any of plaintiff's W-2 wage tax statements or even any documentation of his prior earnings.  (Ex. L, at 63:23-64:5; 64:13-17).  Plaintiff did not produce these documents during discovery.  She also did not review, let alone rely, on the entirety of plaintiff's testimony in this case as she only reviewed his 50-h hearing testimony.  (Id. at 63:3-22; 68:7-19).  Kucsma admitted that she was not aware of any employment that plaintiff had before January 30, 2010.  (Id. at 113:4-7).  While she claimed that plaintiff was employed as a warehouse worker earning minimum wage and working 32 hours per week from about January 30, 2010, up to the date of his arrest (July 30, 2010), she only obtained this information from his 50-h hearing transcript and a factfinding questionnaire that was

completed on his behalf by someone from plaintiff's counsel's office.  (Id. at 112:4-113:7; 136:18-22; 138:4-13).  Plaintiff admitted at his 50-h hearing that he only had one part-time job for a few months before his underlying arrest in this matter and that he never worked previously outside of prison.  (Ex. M, at 34:20-35:6; 57:17-25).  Plaintiff also did not know, and could not even approximate, how much he was earning at that time.  (Ex. N, at 37:18-38:25; 124:14-25; 138:16-140:11).

In fact, Kucsma admitted that she did not ever review any documentation of plaintiff's alleged earnings, and she never saw any documents evidencing days that plaintiff actually worked. (Ex. L, at 148:3-18).  Similarly, she admitted she has not seen any documentation that plaintiff had ever received any fringe benefits from his purported prior job in 2010.  (Id. at 128:10-22).  She further admitted that based on the fact-finding questionnaire, he had not received any fringe benefits in connection with that employment but included these in her calculations.  (Id. at 148:19-150:17).  Moreover, she never reviewed any documents for social security disability or jobs that he applied to since his release from prison.  (Id. at 66:2-25).

In sum, Kucsma's testimony concerning plaintiff's alleged lost earnings is speculative, based upon unrealistic assumptions, and lack any sufficient factual foundation, all of which makes such evidence inadmissible at trial.  See Boucher, 73 F.3d at 21-22; see also Pogil, 2024 WL 1208909, at *13.  Therefore, Kucsma should be completely precluded from testifying and the plaintiff should be precluded from offering her report into evidence at trial.

**XIII.  Plaintiff's lost earnings claim should be dismissed because he has not provided any evidentiary support for such a claim.**

Similarly, the plaintiff's purported lost earnings claim should be dismissed because he has not provided any evidentiary proof for such claims which are based on speculation and conjecture. It is undisputed that plaintiff has the burden to establish entitlement to damages and such award

14

for economic damages cannot be "rooted in speculation." Alla v. Verkay, 979 F. Supp. 2d 349, 376 (E.D.N.Y. 2013). In other words, a plaintiff cannot rely on pure speculation and conjecture to prove their loss earnings claims. Id. "When assessing damages, a court cannot rely on the plaintiff's statement of the damages; rather damages must be established 'with reasonable certainty.'" Braccia v. D'Blass Corp., No. 08-CV-08927 (LTS) (KNF), 2011 WL 2848146, at *3 (S.D.N.Y. June 13, 2011) (report and recommendation) (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997)); Diesel Tanker Ira S. Bushey, Inc. v. Tug Bruce A. McAllister, No. 92-CV-5559 (SS) (THK), 1994 WL 320328, at *18 (S.D.N.Y. 1994) (holding plaintiff's proof of lost earnings was "woefully inadequate" and as such, plaintiff "failed to prove the amount of lost earnings to a reasonable certainty"). Here, the plaintiff has proffered no evidence of his prior earnings history. Based on his own testimony, Plaintiff only ever worked one part-time job in his whole life, which was only for a few months and he did not even know how much he had earned during that time. (Ex. M, at 34:20-35:6; 57:17-25; Ex. N, at 37:18-38:25; 124:14-25; 138:16-140:11). For these reasons, as well as the reasons set forth above concerning why Kucsma's testimony and her report should be precluded, plaintiff's purported lost earnings claim must be dismissed.

**XIV. Dr. Jennifer Dysart should be precluded from testifying at trial because her report and anticipated testimony are irrelevant and highly prejudicial.**

Testimony from the plaintiff's eyewitness identification expert, Dr. Jennifer Dysart, along with her report should also be precluded. Specifically, Dr. Dysart's testimony and report should be precluded because her opinions as to how a witness's memory can be affected based upon an unduly suggestive showup are not germane to the case. The only remaining claims in this matter even connected to the showup identification concern whether Officer Rude and Detective Weaver allegedly fabricated evidence by intentionally omitting the circumstances of the showup from their

reports.  In other words, there is no claim remaining that Plaintiff could recover based on the nature of the showup identification.  (Ex. C).

It is well established that the district court's "gatekeeping" function under Rule 702 of the Federal Rules of Civil Procedure ensures that the expert's testimony is relevant to the issue at hand.  See Daubert, 509 U.S. at 597.  "Expert testimony that is not probative of a fact in issue is irrelevant and inadmissible."  See Carmichael v. City of New York, 34 F. Supp. 3d 252, 265 (E.D.N.Y. 2014) (citing Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 60 (2d Cir. 2002)); see also Fed. R. Evid. 403.  In her report, Dr. Dysart purports to analyze estimator variables, as well as system and reflector variables, with respect to eyewitness reliability.  (Ex. O, at pp. 7-19).  These estimator variables are the victim's opportunity to observe, exposure time and time estimates, weapon-focus effect, and stress/arousal.  (Id. at pp. 7-10).  The system and reflector variables include post-event contamination, description "accuracy", pre-identification warnings/instructions, showup, clothing bias, repeated identification procedures, witness confidence and post-identification feedback.  (Id. at pp. 10-19).  Dr. Dysart states that "[t]he evidentiary value of an eyewitness identification can be assessed by the existence or absence of factors known – empirically – to influence the strength of the witness's memory, the reliability of the identification, and the reliability of the in-court testimony."  (Id. at p. 20).  Dr. Dysart also explains that this evidentiary value is undermined when factors that decrease reliability are present and the more prevalent these factors appear, then an identification is less probative.  (Id.).  She concludes that the combination of the victim's weak memory, coupled with the suggestive identification procedure, easily accounts for the selection of plaintiff as the perpetrator.  (Id.).

Notwithstanding the above, Dr. Dysart admitted that she was not even saying that the victim's identification was incorrect.  (Ex. P, at p. 26:6-11).  In her own words, Dr. Dysart

16

explained that she "made a conclusion that there are a number of factors present that have been shown scientifically to reduce the accuracy of witness' memories that can affect eyewitness reliability." (Id. at p. 30:14-18). Dr. Dysart further opined that showups are never recommended based on the science. (Id. at p. 156:12-13).

Dr. Dysart's testimony should be excluded is clearly not relevant to the plaintiff's remaining claims, which are limited to alleged fabrication of evidence concerning whether plaintiff possessed a Sawzall blade and purported omissions from the police officer's reports concerning the showup identification, as well as alleged suppression of evidence related to the Sawzall blade and an alleged statement to the victim prior to the showup identification. See Moody v. CSX Transp., Inc., 271 F. Supp. 3d 410, 421 (W.D.N.Y. 2017) (precluding expert's opinions that were irrelevant to the two remaining claims); In re Refco Inc. Securities Litigation, Nos. 07-MD-1902 (JSR), 08-CV-3065 (JSR), 08-CV-3086 (JSR), 2012 WL 7007795, at *4 (S.D.N.Y. Nov. 29, 2012) (collecting cases and explaining that experts that are opining about the merits of dismissed claims are not fit under the Daubert requirement for the "simple reason that those merits have already been determined and are no longer relevant to the proceedings"), report and recommendation adopted, 2013 WL 452400 (S.D.N.Y. Feb. 6, 2013); see also Fed. R. Evid. 403. Dr. Dysart's opinions are limited to whether the victim's identifications of plaintiff were reliable, which has no probative value whatsoever, is entirely irrelevant to plaintiff's remaining claims, and is highly prejudicial. See United States v. Stewart, 433 F.3d 273, 311-12 & n. 10 (2d Cir. 2006) (holding that the district court properly excluded expert testimony on an unrelated issue, explaining that such testimony on an irrelevant issue would have increased the potential for jury confusion); see also Sakoc v. Carlson, No. 5:11-CV-290 (CR), 2014 WL 12717389, at *5 (D. Vt. Aug. 26, 2014) (excluding expert's opinion testimony because it had no relevance to the defendant's liability as

17

to the false arrest claim at issue). Clearly, Dr. Dysart's testimony would be unfairly prejudicial and only would serve to confuse and mislead the jury of the issues and remaining claims. (Id.). Therefore, Dr. Dysart should be precluded from testifying, along with her report, should be precluded from being offered into evidence at trial.

**XV.    Plaintiff should be precluded from arguing to the jury that the description provided by Ms. Villamore did not provide the police with probable cause to arrest and prosecute him for robbery.**

Given the Court's finding of probable cause to arrest and prosecute Plaintiff based on the description provided by Viola Villamore and the dismissal of his false arrest and malicious prosecution claims, Plaintiff should be precluded from arguing that he did not match the description provided or that the police had no reason to arrest or charge him. See Gorbea v. Verizon New York, Inc., No. 11-CV-3758 (KAM) (LB), 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2014) ("…[C]laims that were dismissed or determined by summary judgment, including the alleged failure to accommodate plaintiff's asthma, the finding that plaintiff's alleged back disability does not limit the major life activity of working, and the determination that plaintiff's current medical leave is not retaliatory, may not be tried, and evidence relating thereto may not be introduced at trial."); see also Hamza v. Saks Fifth Ave., Inc., No. 07-CV-5974 (FPS), 2011 WL 6187078, at *7 (S.D.N.Y. Dec. 5, 2011) (excluding evidence, pursuant to Fed. R. Evid. 401 and 402, where only plaintiff's retaliatory discharge claims were at issue at trial).

**XVI.    Plaintiff's prior use of aliases is admissible.**

Defendants should be permitted to introduce evidence of Plaintiff's use of aliases as this practice is relevant to this case. Specifically, Ms. Villamore informed the police that her assailant called himself "Manny," which is not Plaintiff's legal name. As such, Plaintiff's tendency to use false names on past occasions is relevant to his modus operandi and whether he used a false name when robbing the victim. In addition, Plaintiff admitted at his 50-h hearing and his deposition that

18

his nickname is "Man." (Ex. M, at 134:8-22; Ex. N, at 19:13-20:2). Moreover, the prior use of

aliases further reflects on Plaintiff's credibility. See Jean-Laurent v. Hennessy, 840 F. Supp. 2d

529, 552 (E.D.N.Y. 2011); Williams v. McCarthy, No. 05-CV-10230 (SAS), 2007 WL 3125314,

at *3 (S.D.N.Y. Oct. 25, 2007); Thompson v. Yelich, No. 09-CV-5039 (KAM) (LB), 2011 WL

9523319, at *5 & n. 3 (E.D.N.Y. May 31, 2011); Monegro v. Greiner, No. 03-CV-2735 (NRB),

2004 WL 187129, at *6, n. 6 (S.D.N.Y. Jan. 28, 2004); see also Lyda v. United States, 321 F.2d

788, 793 (9th Cir. 1963) ("The issue is whether the use of false names bears directly enough upon

the witness' veracity as to outweigh the general prohibition against cross-examining about

particular acts of misconduct other than convictions of a crime. We think it does. If a man lie

about his own name, might he not tell other lies?"); United States v. Murgas, 967 F. Supp. 695,

710 (N.D.N.Y. 1997) ("Generally, however, aliases are stricken only if they constitute prejudicial

surplusage and will not assist the trier of fact in identifying a particular defendant or defendants.").

## XVII.  **Plaintiff should be precluded from offering evidence related to being placed in solitary confinement and being stabbed during his incarceration following the prosecution at issue in this case pursuant to the Court's Order partially granting the defendants' motion to dismiss.**

In its July 28, 2022, decision on the defendants' motion to dismiss, the Court dismissed

two of Plaintiff's claims for damages that arose during his incarceration: (1) the fact that he was

held in solitary confinement; and (2) the fact that he was stabbed by another inmate while

incarcerated. (Ex. Q, at 30:8-34:3). Pursuant to this Order, Plaintiff should be prohibited from

testifying or presenting evidence about these matters to the jury.

## XVIII.  **Plaintiff's prior incarcerations are admissible because they are relevant to his damages claims.**

Defendants should be permitted to introduce evidence that Plaintiff previously spent years

in prison prior to his imprisonment for the convictions in the case at bar because a plaintiff's prior

time in prison is certainly relevant to claims that imprisonment caused psychological damages, as

Plaintiff claims in this case. See Warney v. City of Rochester, No. 07-CV-6246 (BMC), 2011 WL 13300297, at *2 (W.D.N.Y. Aug. 31, 2011) ("[E]vidence of a prior incarceration may be relevant to the damages assessment. In such a case, the jury may find that the stress and shock of confinement might be decreased for someone who has experienced imprisonment before."). Here, the fact that Plaintiff spent much of his adult life in prison prior to serving his sentence in the case at bar is relevant to a jury's determination of any psychological damages he claims to have suffered. It is also relevant should Dr. Fraser be permitted to testify regarding his PTSD diagnosis as a potential alternative cause of this diagnosis. Thus, his prior time spent in prison should be admitted subject to a limited instruction.

## XIX. <u>Defendants should be permitted to argue that Plaintiff in fact committed the crimes he was accused of.</u>

Defendants should be permitted to argue at trial that Plaintiff committed the underlying armed robbery of Viola Villamore and was therefore guilty of the crimes that he was allegedly convicted of and sentenced for. The evidence of Plaintiff's guilt is relevant to the issues of damages, whether the alleged fabrication of evidence caused a deprivation of liberty, and the materiality of any alleged evidence fabrication and Brady violation. See Nnodimele v. Derienzo, No. 13-CV-3461 (ARR) (RLM), 2016 WL 3561708, at *11 (E.D.N.Y. June 27, 2016) ("The jury in this trial is entitled to understand the nature and quality of that inculpatory evidence so it may properly assess the reasonably probable effect of the evidence allegedly withheld."); Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d. Cir. 2012) (summary order) ("Jovanovic cannot show causation—i.e., that the alleged fabrication of evidence led to a deprivation of his liberty."); Parish v. City of Elkhart, 702 F.3d 997, 999 (7th Cir. 2012) ( "A jury that believed the plaintiff was guilty of the crime would award lower damages because the imprisonment is attributable to

the person's own actions as well as the civil defendants' misbehavior and even a fair prosecution and trial may well have resulted in the person's imprisonment.").

It is also well settled that it is Plaintiff's burden in establishing, by a preponderance of the evidence, that the alleged fabricated or suppressed evidence caused the deprivation.  See Roland v. City of New York, No. 20-CV-05392 (TMR), 2024 WL 2832691, at *23, 26 (S.D.N.Y. June 3, 2024) (stating that the plaintiff must show "a *causal connection* between the fabrication and the deprivation" which may be satisfied where he would not have been charged with a particular crime absent the fabrication or where the fabrication results in a longer period of detention) (alteration in original); see also Moroughan v. County of Suffolk, 514 F. Supp. 3d 479, 535 (E.D.N.Y. 2021) (stating that the Second Circuit has "held that the fabricated evidence must cause the deprivation of liberty"); Walker v. City of New York, No. 11-CV-00314 (CBA) (JMA), 2014 WL 12652345, at *9 (E.D.N.Y. Sept. 3, 2014) (stating that "[t]he causation requirement is only met if there is sufficient evidence for a jury to determine that the fabricated evidence, as opposed to evidence that supported a finding of probable cause, caused the plaintiff to be deprived of his liberty").  In other words, the harm must be independent of the deprivations supported by probable cause.  See Ganek v. Leibowitz, 874 F.3d 73, 91 (2d Cir. 2017) (holding that even though a fabrication of evidence claim can still stand where there is probable cause for an arrest, a plaintiff must sustain a "further deprivation" of liberty from the fabrication of evidence); see also Ricciuti v. New York City Transit Auth., 70 F. Supp. 2d 300, 332 (S.D.N.Y. 1999) (holding that a plaintiff must prove actual damages resulting from the alleged fabrication of evidence).  Accordingly, inculpatory evidence is relevant and admissible in this action.

**XX.**    **Plaintiff should be precluded from arguing that it was improper for Detective Weaver and Officer Flaherty to hold Plaintiff's shirt up to him during Villamore's showup identification.**

Plaintiff should be prohibited from arguing, as he has repeatedly, that it was somehow improper for Detective Weaver and Officer Flaherty to hold up Plaintiff's shirt in front of him prior to Villamore's show-up identification as this is both: (1) not relevant to the remaining fabrication of evidence and Brady claims; and (2) constitutionally permissible conduct under Second Circuit precedent.  Since Plaintiff admitted that the shirt in question belonged to him and Villamore described the striped shirt her assailant was wearing to the police in the phone call that led to Plaintiff's apprehension, the shirt was properly considered in the show-up identification and it cannot be claimed to constitute fabricated or suppressed evidence, rendering any argument about the propriety of holding it up irrelevant to the remaining claims.  Furthermore, holding up a suspect's article of clothing in front of a suspect or directing a suspect to hold up his or her own clothing during a show-up identification does not violate the constitution.  See, e.g., Brisco v. Ercole, 565 F.3d 80, 84, 90-91 (2d Cir. 2009) (holding that the show-up identification where officer asked suspect to hold up suspect's maroon shorts prior to identification did not violate clearly established federal law); People v. Dunbar, 104 A.D.3d 198, 217 (2d Dept. 2013), aff'd 24 N.Y.3d 304 (2014); People v. Brisco, 99 N.Y.2d 596, 597 (2003).

**XXI.**    **Plaintiff should be precluded from presenting evidence or cross-examining Officer Maguire about the unadjudicated New York Civil Service Law § 75 charges brought against him by the City of Newburgh.**

In 2016, Officer Maguire was questioned by agents of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") regarding his 2013 purchase of a gun which was subsequently used in the commission of a crime.  The ATF took no action against Officer Maguire following this questioning and he was not charged with any crime.  Upon learning of this ATF questioning, the City of Newburgh brought charges against Officer Maguire pursuant to New York

Civil Service Law § 75. (Ex. R). Before these charges were adjudicated, Officer Maguire and the

City subsequently entered into a settlement agreement pursuant to which the Section 75 charges

were withdrawn and Officer Maguire tendered his resignation. (Ex. S). Because he resigned while

Section 75 charges were pending, Officer Maguire's certification to be a police officer was revoked

by operation of law pursuant to 9 NYCRR 6056.4(e), however, he subsequently applied for and

received recertification in 2018. (Ex. T, at 88:11-89:23).

Rule 608(b) of the Federal Rules of Evidence permits cross-examination into a witness's

prior acts that bear on his character for truthfulness or untruthfulness. Yet, the proffering party

must have a good faith basis to believe that the untruthful acts actually occurred, and the Court can

preclude this line of questioning under Rule 403 if it determines that the inquiry's probative value

would be substantially outweighed by a risk of unfair prejudice. See Hynes v. Coughlin, 79 F.3d

285, 294 (2d Cir. 1996). A party may not prove the witness's untruthful acts through the

introduction of extrinsic evidence. Fed. R. Evid. 608(b).

While Courts within this circuit have permitted the introduction of adverse credibility

findings made by non-judicial tribunals following a formal hearing, the charges against Officer

Maguire were dismissed pursuant to a settlement agreement and were never adjudicated. He has

never been found guilty of any offense pertaining to this incident by any judicial or quasi-judicial

entity. See United States v. Clanton, 769 F. Supp. 3d 147, 155 (E.D.N.Y. 2024) ("Settled civil

lawsuits that lack adverse findings or admissions of wrongdoing are not probative of

truthfulness."); United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3

(E.D.N.Y. July 1, 2016) ("The Court does not consider the existence of a complaint containing

unproven allegations or a settlement agreement lacking any adverse findings probative of the

witness' truthfulness."); United States v. Motovich, No. 21-CR-497 (WFK), 2024 WL 3303723,

at \*18 (E.D.N.Y. July 2, 2024) ("[T]he Amended Complaint does not make specific allegations regarding [the witness's] truthfulness nor have there been any findings in that case as to [the witness's] truthfulness, as required to bring it within the ambit of Rule 608(b)."); Manbro Energy Corp. v. Chatterjee Advisors, LLC, No. 20-CV-3773 (LGS), 2023 WL 2563054, at \*3 (S.D.N.Y. Mar. 17, 2023) ("[E]vidence that [the witness] was accused by the SEC of insider trading decades ago is of limited probative value in evaluating [the witness's] character for truthfulness under Rule 608(b), given the time elapsed and that the matter settled with no admission of wrongdoing."); Senior v. Eihab Human Servs., Inc., No. 15-CV-1009 (ENV) (PK), 2023 WL 7134076, at \*1 (E.D.N.Y. Apr. 19, 2023) ("Evidence of prior...litigation that is remote in time, lacks any adverse findings probative of truthfulness, or contains unproven allegations is not probative of truthfulness.") (internal quotations omitted); see also United States v. Lawes, 292 F.3d 123, 131-32 (2d Cir. 2002) (upholding district court's decision to preclude cross-examination of a police officer regarding a CCRB citation in which the CCRB "did not credit his testimony" and noting "[t]he proposed cross-examination was of little, if any, plausible relevance to [the witness's] credibility").   Therefore, Plaintiff should be precluded from introducing extrinsic evidence or cross-examining Officer Maguire about these unproven charges pursuant to Fed. R. Evid. 608.

## XXII.    Plaintiff's extensive history of prior criminal convictions should be admitted for impeachment purposes pursuant to Fed. R. Civ. P. 609(b)(1).

Because Plaintiff has an extensive history of serious criminal convictions and his credibility is central to his claims in this case, Fed. R. Evid. 609(b) permits the use of criminal convictions which are more than ten years old for impeachment purposes only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that

24

the party has a fair opportunity to contest its use.  Factors to consider in determining whether a conviction is sufficiently probative to outweigh its prejudice were listed in United States v. Mahone, 537 F.2d 922, 929 (7th Cir. 1976), cert. denied, 429 U.S. 1025 (1976).  Those factors are "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past conviction and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue."  See United States v. Brown, 606 F. Supp. 2d 306, 311-12 (E.D.N.Y. 2009) (applying Mahone factors). In the case at bar, Plaintiff's criminal rap sheet in this matter reflects not a single isolated conviction, but an extensive criminal history of imprisonment leading up to his arrest and imprisonment in the underlying case including five felony convictions.  (Ex. H).  He was imprisoned for the bulk of the ten-year period prior to his testimony in this case, significantly reducing the chance that he could be convicted of new offenses during this time, increasing the probative value of his old convictions and reducing the probative value of the fact that he has not been convicted in the previous ten years.  Furthermore, as the Plaintiff in this civil action, his testimony is important, and his credibility is a central issue in this case.  Finally, the testimony and credibility of Gardner is likely to be important at trial. See Brown, 606 F. Supp. at 311. "[W]here the credibility of a given witness is particularly important because there is little other documentary or supporting evidence and success at trial probably hinges entirely on the witness's credibility with the jury, the fourth factor weighs in favor of admission of the prior conviction." Jean-Laurent, 840 F. Supp. 2d at 544.

## CONCLUSION

Wherefore, in light of the foregoing, it is respectfully submitted that the Defendants' motions in limine should be granted in their entirety, along with any further relief that this Court deems just and proper.

Dated: September 17, 2025
     New York, New York

               Respectfully submitted,

               MORRIS DUFFY ALONSO FALEY & PITCOFF

By: _____

               KENNETH E. PITCOFF
               MICHAEL A. CZOLACZ
               FRANK H. FOSTER
               *Attorneys for Defendants*
               Police Officer MYRA RUDE,
               Detective AARON WEAVER, and
               Police Officer JOHN MAGUIRE
               101 Greenwich Street, 22nd Floor
               New York, New York 10006
               Tel. No.: (212) 766-1888
               Fax: (212) 766-3252
               File No.: (MCS) 75692

TO:    All Counsel of Record *via ECF*