# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Kenyatta James,

        *Plaintiff,*

      v.

City of Newburgh, *et al.,*

        *Defendants.*

**21 CV 1673 (CS)**

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTIONS *IN LIMINE*

Elefterakis, Elefterakis & Panek
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

September 17, 2025

## Table of Contents

Page

**Table of Authorities** ...........................................................................................i

1.  The Court should take judicial notice of the reversals and grounds ................ 1

2.  The Court should preclude defendants from using plaintiff's prior convictions, prison disciplinary history, arrests, aliases, and other collateral bad acts for impeachment or any other purpose. ......................... 2

   a.  Prior convictions ................................................................................... 2

   b.  Prison disciplinary history ................................................................... 6

   c.  Arrests without convictions .................................................................. 6

   d.  Collateral character attacks .................................................................. 8

   e.  Use of aliases ........................................................................................ 8

3.  Evidence offered solely to establish probable cause or plaintiff's guilt should be precluded, while evidence of plaintiff's innocence should be admitted. ............................................................................................................ 9

4.  The Court should preclude indictment evidence and testimony. ................... 11

5.  Testifying prosecutors should be precluded from vouching for or bolstering other witnesses' credibility or opining on probable cause. ........ 12

6.  The pre-sentence report should be precluded .................................................. 13

7.  The scent tracking evidence should be precluded as irrelevant, inadequately and belatedly disclosed and unreliable. ................................... 15

8.  The location photographs should be precluded. .............................................. 16

9.  Defense counsel's statements at plaintiff's trial and plaintiff's statements at sentencing should be precluded. ........................................... 17

10. Defendants should be precluded from mentioning plaintiff's nickname. ....... 20

**Conclusion** ......................................................................................................... 21

# Table of Authorities

## CASES

*Adams v. City of New York*, 993 F. Supp. 2d 306 (E.D.N.Y. 2014) ............................13

*Ayers v. City of Cleveland*, 773 F.3d 161 (6th Cir. 2014) ..............................................10

*Beechwood Restorative Care Ctr. v. Leeds*, 856 F. Supp. 2d 580 (W.D.N.Y. 2012)......1

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) ...........................................13

*Carter v. City of Philadelphia*, 97 CV 4499, 2000 WL 1016653 (E.D.Pa. July 12, 2000) ...................................................................................................................................11

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010) ...............10

*Daniels v. Loizzo*, 986 F.Supp. 245 (S.D.N.Y. 1997) ......................................................5

*Eng v. Scully*, 146 F.R.D. 74 (S.D.N.Y. 1993)..................................................................4

*Fletcher v. City of New York*, 54 F. Supp. 2d 328 (S.D.N.Y. 1999) ...........................8, 9

*Good v. Curtis*, 601 F.3d 393 (5th Cir. 2010)..................................................................10

*Gourdine v. Traynor*, 90 CV 1029, 1995 WL 946514 (W.D.N.Y. Aug. 22, 1995) .........7

*Hynes v. Coughlin*, 79 F.3d 285 (2d Cir. 1996)................................................................3

*In re Herman Atkins*, 06-7 4094 (9th Cir. Order, Aug. 22, 2006)...................................9

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013).............................................10

*Jovanovic v. City of New York*, 486 F. App'x 149 (2d Cir. 2012) ...................................9

*Newsome v. McCabe*, 96 CV 7680, 2002 WL 548725 (N.D. Ill. Apr. 4, 2002) ............10

*Newton v. City of New York*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016)...............................2

*Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012)..................................................9

*People v. James*, 128 A.D.3d 723 (2d Dep't 2015) .........................................................1

*People v. James*, 179 A.D.3d 1095 (2d Dep't 2020) .......................................................1

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) .....................................................10

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997).......................................9

*Rosario v. City of New York*, 18 CV 4023 (LGS), 2021 WL 9455782 (S.D.N.Y. Nov. 23, 2021) ...........................................................................................................................1

*Schering Corp. v. Pfizer Inc.*, 189 F.3d 218 (2d Cir. 1999) ..........................................14

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017)............................................................10

*Stephen v. Hanley*, 03 CV 6226 (KAM), 2009 WL 1471180 (E.D.N.Y. May 21, 2009) 5

*U.S. v. Hayes*, 553 F.2d 824 (2d Cir. 1977).....................................................................5

*U.S. v. McKeon*, 738 F.2d 26 (2d Cir. 1984).............................................................18, 19

*U.S. v. Ortiz*, 553 F.2d 782 (2d Cir. 1988) ......................................................................5

*United States v. Graham*, 08 CR 6259L (DGL) (MWP), 2011 WL 1457131 (W.D.N.Y. Apr. 8, 2011) .....................................................................................................................15

*White v. Smith*, 696 F.3d 740 (8th Cir. 2012)..................................................................10

*Wisdom v. Undercover Police Officer No.* C0127, 879 F. Supp. 2d 339 (E.D.N.Y. 2012) ......................................................................................................................................3

## STATUTES

42 U.S.C. § 1983................................................................................................................10

## Rules

Fed. R. Civ. P. 37(c)(1) ................................................................. 16
Fed. R. Evid. 104(a) ..................................................................... 19
Fed. R. Evid. 201 ........................................................................... 1
Fed. R. Evid. 402 ..................................................................... 9, 12
Fed. R. Evid. 403 ......................................................................... 17
Fed. R. Evid. 410 ......................................................................... 17
Fed. R. Evid. 608(b) ....................................................................... 7
Fed. R. Evid. 609(a)(1) ................................................................... 4
Fed. R. Evid. 609(b)(1) ................................................................... 6
Fed. R. Evid. 609(d) ....................................................................... 6
Fed. R. Evid. 801(d)(2) ................................................................. 17
Fed. R. Evid. 901 ......................................................................... 17

## Treatises

4 Weinstein's Federal Evidence § 609.04[3][a] ................................ 4
4 Weinstein's Federal Evidence, § 609.04[2][a] ............................... 5

**1. The Court should take judicial notice of the reversals and grounds.**

If it should please the Court, the legal issues in this case – whether defendants fabricated and suppressed evidence – are inextricably intertwined with plaintiff's criminal prosecution. The jury will necessarily learn that plaintiff was tried and convicted twice and, in the absence of information, may speculate that those convictions remain in place or that any reversals resulted from mere technicalities. To protect against the risk of prejudice posed by these circumstances, the Court should take judicial notice under Rule 201 of the fact that appellate courts overturned Mr. James's convictions twice, first because the show-up was unduly suggestive and then due to insufficiency of the evidence. *People v. James*, 128 A.D.3d 723 (2d Dep't 2015); *People v. James*, 179 A.D.3d 1095 (2d Dep't 2020), *leave to appeal denied*, 35 N.Y.3d 971.

The undisturbed appellate decisions are public records subject to judicial notice. *See* Fed. R. Evid. 201; *Beechwood Restorative Care Ctr. v. Leeds*, 856 F. Supp. 2d 580, 590 (W.D.N.Y. 2012) ("In general, a federal court may take judicial notice of the decisions of another court.") (citations omitted) (collecting cases).

In the *Rosario* wrongful conviction trial in this district, the Honorable Lorna G. Schofield ruled *in limine* that the grounds for overturing the plaintiff's conviction were relevant and ordered the parties to attempt to agree on a stipulation to be read to the jury. *Rosario v. City of New York*, 18 CV 4023 (LGS), 2021 WL 9455782, at *3 (S.D.N.Y. Nov. 23, 2021), *opinion clarified*, 2022 WL 3098305 (S.D.N.Y. Aug. 4, 2022). Here, plaintiff respectfully submits that there is even greater relevance than in *Rosario* (where *vacatur* was based on defense counsel's ineffectiveness), because the

*vacatur* decisions bear directly on defendants' liability for due process deprivations, and exclusion would result in unfair prejudice to plaintiff. *See Newton v. City of New York*, 171 F. Supp. 3d 156, 170-71 (S.D.N.Y. 2016) (weighing prejudice in admitting details of a plaintiff's criminal convictions).

Accordingly, plaintiff respectfully requests that the Court take judicial notice and instruct the jury that plaintiff's convictions were overturned twice on appeal and the basis for each decision.

**2. The Court should preclude defendants from using plaintiff's prior convictions, prison disciplinary history, arrests, aliases, and other collateral bad acts for impeachment or any other purpose.**

**a. Prior convictions**

Defendants should be barred from introducing or eliciting testimony regarding plaintiff's prior convictions, which, according to his RAP sheet, include:

1. a Youthful Offender adjudication on charges of misdemeanor petit larceny and felony 4th degree criminal weapons possession in June 1996 (for which he received a 30-month sentence);
2. a guilty plea to misdemeanor fare evasion in February 1996 (for which he received time served);
3. a guilty plea to felony 3rd degree attempted criminal sale of a controlled substance in November 1996 (for which he received a one-year sentence);
4. a guilty plea to misdemeanor fare evasion in September 1996 (for which he received a conditional discharge, community service and, following resentencing in February 1997, time served);
5. a guilty plea to misdemeanor fare evasion in October 1996 (for which he received time served);
6. a guilty plea to felony attempted criminal sale of a controlled substance in the 5th degree in September 1997 (for which he received a 30-month-to-five-year sentence); and
7. a jury verdict in February 2002 convicting him of 1st degree felony possession of prison contraband (for which he received 42 months to 7 years) and

attempted 1ˢᵗ degree assault with a weapon (for which he received a 2-to-4-year sentence).

Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Applying Rule 404(b), the Second Circuit has held, for example, that in an excessive force case regarding a prisoner's treatment by corrections officers, the plaintiff's prison disciplinary records cannot be offered to show that the plaintiff has an "aggressive character" and "that it was therefore more likely than not that he was the aggressor on the occasions in question." *Hynes v. Coughlin*, 79 F.3d 285, 292 (2d Cir. 1996). Here, evidence of Mr. James's convictions similarly serves no purpose other than to encourage the jury to draw the impermissible inference that Mr. James has a bad character and acted in conformity therewith at the time of the disputed events; that is explicitly prohibited by Rule 404(b). *See Wisdom v. Undercover Police Officer No.* C0127, 879 F. Supp. 2d 339, 342 (E.D.N.Y. 2012) (citation omitted).

Rule 404(b) does provide that "other crimes, wrongs or acts" evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Hynes*, 79 F.3d at 290. However, because evidence concerning Mr. James's convictions does not help demonstrate any of those things, to the extent they are even at issue in this case (with respect to Mr. James), such evidence should be excluded.

Mr. James's decades-old convictions on weapons, assault and drug charges have no bearing on either Mr. James's conduct or state of mind – or that of defendants –

at the time of the disputed events. Evidence of these convictions will not illuminate whether defendants fabricated or suppressed evidence, nor will it aid the jury in determining whether Mr. James was deprived of due process. The convictions are also entirely irrelevant to the question of damages.

Even if Mr. James's convictions were relevant – and they are not – evidence of these convictions is unfairly prejudicial and should be excluded pursuant to Rule 403. The convictions are not evidence related to the prosecution or alleged wrongful conviction. There is a substantial likelihood, however, that the jury would impermissibly discount Mr. James's account of the events because of his status as a felon. The probative value of Mr. James's felony convictions, if any, is far outweighed by the unfair prejudice they would inevitably cause if they were admitted. Second, evidence of Mr. James's felony convictions cannot be used to impeach him under Rule 609 because its probative value is substantially outweighed by the danger of unfair prejudice. Pursuant to this Rule, courts are required to consider the probative value of a felony conviction in light of its prejudicial effect. *See Daniels v. Loizzo,* 986 F.Supp. 245, 250 (S.D.N.Y. 1997) ("[a]s amended in 1990, Rule 609 now explicitly provides that prior convictions of all witnesses other than a criminal defendant, including witnesses in civil actions, shall be admitted subject to Rule 403.") (citing Fed. R. Evid. 609(a)(1); 4 Weinstein's Federal Evidence § 609.04[3][a] at 609-36 (1997)); *see, e.g., Eng v. Scully,* 146 F.R.D. 74, 78 (S.D.N.Y. 1993).

Courts in this circuit have held that, when balancing probative value against prejudicial effect under Rule 609(a)(1), judges should examine the following factors:

4

(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue in the present litigation, and (4) the importance of the credibility of the witness. *Daniels,* 986 F.Supp. at 250 (citing 4 Weinstein's Federal Evidence, § 609.04[2][a]). Central to that analysis is whether the prior crime is particularly probative of credibility. *Stephen v. Hanley*, 03 CV 6226 (KAM), 2009 WL 1471180, *4 (E.D.N.Y. May 21, 2009) ("[p]aramount among the factors to consider in the balancing analysis is whether the crime, by its nature, is probative of the lack of veracity") (citing *U.S. v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1988)).

Here, the factors counsel strongly against admission under Rule 609(a)(1) as Mr. James's convictions for assault, weapons possession and drugs have no bearing on his veracity and are exceedingly remote. *See U.S. v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) (crimes of force or stealth, such as armed robbery, assault, burglary or petit larceny, do not implicate truthfulness for the purposes of Rule 609). Further militating against admission, the prior convictions involving armed violence are functionally identical to the criminal charges at issue in this litigation. *See Daniels*, 986 F.Supp. at 251 ('[T]here [] is no justification and considerable danger in impeaching a defendant's credibility with a prior conviction for the same type of offense as the one on trial…").

Additionally, evidence regarding Mr. James's remote misdemeanor convictions is inadmissible under Rule 609(a)(1) and has no probative value and should therefore be categorically excluded. Likewise, Mr. James's Youthful Offender felony conviction

5

is expressly inadmissible under Fed. R. Evid. 609(d) and should be precluded. Further, his felonies from the 1990s and 2002 would only be admissible upon a finding under Fed. R. Evid. 609(b)(1) that the probative value substantially outweighs the prejudicial effect. However, such finding is unwarranted because the prejudicial impact is very high since the disputed conduct here involves a crime of violence and there is only marginal probative value in convictions from more than a quarter century ago. Accordingly, all evidence and testimony reflecting plaintiff's convictions, including defendants' proposed Exhibits EE and FF should be precluded.

### b. Prison disciplinary history

Defendants may attempt to offer evidence or elicit testimony regarding plaintiff's disciplinary infractions and alleged disputes with officers and other incarcerated persons, including a 2000 incident in which he was convicted of attempting to stab a correction officer. There is no probative value to such remote evidence and plaintiff's conduct while incarcerated over two decades ago (and other incidents of more than a decade ago) carry a high risk of prejudice with little to no probative value and should be excluded as inadmissible character and propensity evidence under Rule 404(b) and *Hynes. See* 79 F.3d at 292. Even if arguably relevant, it should be excluded under Rule 403 because the danger of unfair prejudice and jury confusion vastly outweighs any probative value.

### c. Arrests without convictions

Defendants should be precluded from introducing any evidence of Mr. James's prior arrests, charges or allegations for which Mr. James was arrested, accused or arraigned, but not convicted. The only such arrest reflected on plaintiff's

RAP sheet is a 2009 adjournment in contemplation of dismissal in connection with the possession of marijuana.

Mr. James's arrest record of more than a decade ago is not relevant to or probative of his or the defendants' state of mind or conduct when the events at issue here took place, particularly given the present decriminalization of marijuana. The only possible purpose for admitting this evidence is to encourage the jury to make the impermissible inference that if Mr. James was arrested or accused on prior occasions he must have been guilty in this instance. As such, it is impermissible character evidence explicitly prohibited by Rule 404 and is further prohibited by Rule 403 since the danger of unfair prejudice would substantially outweigh any probative value.

Moreover, this evidence cannot be used to impeach Mr. James. Arrests that have not resulted in convictions are not admissible under Rule 609 or 608(b). *See Stephen*, 2009 WL 1471180 at *8; *Daniels*, 986 F.Supp. at 252 (holding that plaintiff's arrests that did not result in convictions were inadmissible under Fed. R. Evid. 608(b)) (citing *Michelson*, 335 U.S. at 482).

A party may, on cross-examination, inquire into specific instances of conduct to impeach a witness if they are "probative of truthfulness or untruthfulness" and concern "the witness' character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). Because Mr. James's prior arrests are not directly relevant to credibility, they simply cannot be used to impeach. *See Gourdine v. Traynor*, 90 CV 1029, 1995 WL 946514, *4 (W.D.N.Y. Aug. 22, 1995). As with his prior convictions, Mr. James's arrests have no bearing on any of the issues in this case, are irrelevant and their

admission would be unduly prejudicial.

### d.  Collateral character attacks

Defendants may also seek to offer evidence or elicit testimony that plaintiff did not file taxes, has smoked marijuana since his youth, worked only sporadically and spent a significant portion of his life incarcerated. These collateral matters are irrelevant to the issues for trial and serve only to unfairly prejudice plaintiff by painting him as irresponsible, antisocial or lacking civic virtue. Further, there is nothing in the record to provide a good faith basis to even suggest that plaintiff earned sufficient income to trigger tax reporting or payment obligations. Marijuana use is legal in New York State. Accordingly, such evidence should be precluded under Rules 401, 402 and 403.

### e.  Use of aliases

Plaintiff has admitted that, when he was younger, he sometimes gave false names to police or jail staff. This conduct is not a conviction and therefore not admissible under Rule 609. At most, it arguably falls within Rule 608(b), which permits inquiry into specific instances of conduct bearing on truthfulness only in the Court's discretion. Here, the incidents are remote, collateral, and minimally probative, while carrying a significant risk of unfair prejudice.

Plaintiff acknowledges that the weight of the authority in the Second Circuit generally permits cross-examination on the use of aliases. *See, e.g.*, *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (collecting cases). However, plaintiff respectfully urges the Court to exercise its discretion to preclude such examination here for the foregoing reasons. To the extent the Court is inclined to

allow examination on this topic, however, the Court should impose the ordinary restriction that, while defendants may inquire, they must do so "without eliciting the fact that plaintiff was arrested and/or convicted for prior criminal conduct in connection with the use of these aliases." *Id.* (citation and internal quotation marks omitted).

### 3. Evidence offered solely to establish probable cause or plaintiff's guilt should be precluded, while evidence of plaintiff's innocence should be admitted.

At the most recent conference, defense counsel articulated defendants' intention to prove plaintiff's guilt as a part of defendants' trial strategy; such argument is also suggested by defendants' defenses in the Joint Pre-Trial Order ("JPTO"). However, this is improper given that the Court has dismissed plaintiff's malicious prosecution claim and plaintiff's guilt is irrelevant to the remaining due process claims – accordingly, all such arguments and evidence should be precluded. *See* Fed. R. Evid. 402; *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee."); *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Ricciuti* for the proposition that "[p]robable cause is not a defense" to a due process claim).

By contrast, evidence of innocence is not just admissible – it is essential. *See Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012) (holding that the district court abused its discretion by excluding evidence of innocence under Rule 403, necessitating a retrial); *In re Herman Atkins*, 06-7 4094 (9th Cir. Order, Aug. 22, 2006) ("Evidence of actual innocence is both relevant & not subject to exclusion under

Federal Rule of Evidence 403."); *Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017) ("Plaintiffs were not required to prove their innocence to win on their claims at trial. However, the evidence of their innocence provides an important backdrop for their claims at trial."); *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (noting plaintiffs innocence "increase[es] the likelihood that [the defendants] ... fed [a witness who gave inculpatory statement] details about the case"); *White v. Smith*, 696 F.3d 740, 752, 756 (8th Cir. 2012) (noting innocence of plaintiff and his alleged co-conspirators supported his fabrication claim); *Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010) (holding innocence is relevant to claim that identification was fabricated); *Spencer v. Peters*, 857 F.3d 789, 799 (9th Cir. 2017) (holding innocence may be circumstantial proof that an investigator acted with "an unlawful motivation to frame an innocent person, which supports a claim that the investigator deliberately fabricated evidence"); *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) (noting innocence is a "circumstantial method[] of proving deliberate falsification"); *Jimenez v. City of Chicago*, 732 F.3d 710, 713 (7th Cir. 2013) (describing evidence of innocence admitted at § 1983 wrongful conviction trial); *Newsome v. McCabe*, 96 CV 7680, 2002 WL 548725, *6 (N.D. Ill. Apr. 4, 2002), *aff'd* 319 F.3d 301 (7th Cir. 2003) ("Excluding [evidence of innocence] would have been highly prejudicial to Newsome. It would have invited the jurors to draw the impermissible inference that he was actually guilty, and, thus, absolve defendants of any misconduct."); *Parish*, 702 F.3d at 1003 (calling "evidence relating to Parish's innocence ... critical to the damages issue"); *Ayers*, 773 F.3d at 169 (noting "innocence

is also relevant to the issue of damages"); *Carter v. City of Philadelphia*, 97 CV 4499, 2000 WL 1016653, *2-3 (E.D.Pa. July 12, 2000) ("the issue of whether or not a civil plaintiff committed the underlying criminal act is central to the measure of damages," because it "bears on the emotional damage he may have suffered during his imprisonment").

Thus, while defendants cannot use this trial to attempt to re-prove plaintiff's guilt, plaintiff is entitled to offer evidence demonstrating his innocence, such as, *inter alia*, the discrepancies between his description and the described assailant, the lack of robbery proceeds or forensic evidence and the defects in Villamore's identification and related testimony.

**4. The Court should preclude indictment evidence and testimony.**

Defendants have scheduled the grand jury indictments in the JPTO as their proposed trial exhibits X and Y, suggesting that they intend to offer the instruments into evidence or elicit testimony that plaintiff was indicted. This evidence should be precluded for several reasons.

First, the indictments relate to proceedings flowing into criminal judgments that were vacated and nullified by the appellate decisions overturning plaintiff's convictions. Indeed, in this one-eyewitness case the grand jury testimony necessarily related to plaintiff's identification by Villamore in a show-up later ruled unconstitutional. Thus, even if there were relevance to this evidence, which is lacking as a matter of law, it would be unfair, prejudicial and confusing for the jury to learn

11

of the indictments or underlying proceedings without fully understanding the extent to which they were nullified by the subsequent appellate decisions.[1]

Second, given the Court's dismissal of plaintiff's malicious prosecution claim, probable cause and the presumption of it raised by the indictment are legally irrelevant to the remaining claims and would be highly prejudicial if disclosed to the jury. They should be precluded on this basis alone. Fed. R. Evid. 402. Additionally, there is a significant likelihood that the jury, upon learning of plaintiff's indictments, will impermissibly conclude that he is guilty and thus unharmed by any defects in process.

For these reasons, evidence and testimony related to the grand jury indictments should be precluded. To the extent the jury learns that plaintiff was indicted, it should be promptly instructed that such evidence should be disregarded and not considered in its deliberations.

### 5. Testifying prosecutors should be precluded from vouching for or bolstering other witnesses' credibility or opining on probable cause.

Defendants have included former Orange County prosecutors on their JPTO witness list. *See* JPTO, p. 6 (listing former ADAs Kerry Kolek and Eric Parker). Plaintiff anticipates that defendants may seek to elicit testimony from these witnesses about the credibility of other witnesses, including Viola Villamore or the defendants, or to offer opinions about the existence of probable cause, which, as argued above, is not at issue in this trial. Such testimony would, *inter alia*, confuse

---

[1] Plaintiff respectfully notes this further supports his argument for judicial notice as presented in Point 1, *supra*.

the jury with irrelevant evidence that is inadmissible in the Second Circuit, even in cases with extant malicious prosecution claims. *See Cameron v. City of New York*, 598 F.3d 50, 65 (2d Cir. 2010) ("For all these reasons, we hold that prosecutors' opinions as to probable cause and complaining officers' credibility are irrelevant in virtually all cases involving claims of malicious prosecution. In such cases, district courts remain bound by the rules of evidence that normally govern opinion testimony, and accordingly the District Court erred in allowing Peterson and the prosecutors to testify to the officers' credibility and to the existence of probable cause."); *id.* (describing such testimony as "highly prejudicial [and] from seemingly reputable sources-testimony a district judge would not consider admitting in the absence of the malicious prosecution claim"); *accord, e.g., Adams v. City of New York*, 993 F. Supp. 2d 306, 326 (E.D.N.Y. 2014) ("Based on Second Circuit case law, the Assistant District Attorney witnesses cannot testify about their opinion regarding the Undercover Officer's credibility, or that they determined that the information he provided to them was sufficient to establish probable cause.") (citing *Cameron*, 598 F.3d at 64).

Here, where there is no malicious prosecution claim and probable cause is irrelevant, the prosecutors' testimony should be precluded in its entirety or strictly limited to factual testimony regarding the sequence of events and receipt of evidence.

**6. The pre-sentence report should be precluded.**

Defendants have scheduled as their proposed Exhibit Z a single page of the eleven-page pre-sentence report ("PSR") prepared in connection with plaintiff's 2016 sentencing. The complete PSR is annexed as Exhibit 1 to the Declaration of Gabriel

P. Harvis dated September 17, 2025 ("Harvis Decl."). Defendants' proposed exhibit is objectionable for several reasons and should be precluded.

First, the excerpt defendants seek to offer is fundamentally unreliable, confusing and lacking trustworthiness as it was apparently constructed from notes taken by a probation investigator that cannot be independently verified for accuracy. Moreover, the purported statements attributed to plaintiff are inconsistent – both internally and with the record – and appear to incorrectly summarize and relate hearsay as plaintiff allegedly possessed a Sawzall blade and not a knife. Indeed, the confused statements attributed to plaintiff in the PSR suggest in context that he may have been merely articulating his legal defense and not making a factual admission. Indeed, the allegedly inculpatory statement about a knife is immediately followed by his express denial of the conduct underlying the conviction, which included possessing a weapon. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 239 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999) ("A party admission may…be inadmissible when it merely repeats hearsay and thus fails to concede its underlying trustworthiness."). Second, the document should be precluded because it is highly prejudicial and contains inadmissible opinion testimony, multiple layers of hearsay and information related to charged and uncharged crimes and other prior bad acts. Because the Rule of Completeness (Rule 106) may require additional portions for fairness, and because the entire document is irredeemably prejudicial, it should be precluded.

**7. The scent tracking evidence should be precluded as irrelevant, inadequately and belatedly disclosed and unreliable.**

Defendants have scheduled several anticipated trial witnesses and exhibits related to the scent tracking efforts of Officers Hahne and Maguire and their canines. *See* JPTO at Exhibits J and AA. However, this evidence should be precluded for several reasons.

First, the fact that plaintiff's scent was used to track Villamore's property is not relevant to any remaining claim and only relates to probable cause and guilt. This is illustrated by the Court's decision at summary judgment, which cited the scent track as a component of probable cause. Since, as discussed above, probable cause and plaintiff's guilt are irrelevant to the remaining claims as a matter of law, the scent tracking evidence should be precluded as irrelevant.

Second, even if it were deemed relevant, such scent tracking evidence is expert testimony subject to *Daubert* and the disclosure requirements of Rule 26(a)(2). *See United States v. Graham*, 08 CR 6259L (DGL) (MWP), 2011 WL 1457131, *12 (W.D.N.Y. Apr. 8, 2011), *report and recommendation adopted*, 2011 WL 1885343 (W.D.N.Y. May 18, 2011), *aff'd*, 504 F. App'x 63 (2d Cir. 2012) (holding that "dog-sniff evidence constitutes expert testimony that justifies a *Daubert* hearing").

Here, defendants failed to make any of the required disclosures under Rule 26(a)(2) in connection with the scent tracking evidence, and plaintiff was thus deprived of the opportunity to produce rebuttal expert evidence or to interrogate or challenge the disclosures or underlying qualifications or reliability of the handlers or their dogs. *See Id.* at *7 ("[E]vidence gathered by human scent canines may be relied

upon as forensic evidence as long as the reliability of the dog can be established, because there is a wide range of capabilities. Training, certification and maintenance are crucial to determining an individual dog's reliability.") (internal citations and quotation marks omitted).

Moreover, the limited documentary evidence of the canine search (defense exhibit AA) was produced belatedly almost two years after discovery closed. This compounded plaintiff's inability to comprehend or meet the evidence and renders it subject to automatic preclusion under Fed. R. Civ. P. 37(c)(1). Inasmuch as the only documents defendants could offer to demonstrate reliability therefore must be precluded, defendants cannot satisfy *Daubert*.

Accordingly, all scent tracking evidence should be precluded. If the Court is inclined to admit any scent tracking evidence, plaintiff respectfully requests a *Daubert* hearing and the opportunity to produce an expert rebuttal report and engage in expert discovery with respect to defendants' disclosures.

### 8. The location photographs should be precluded.

Defendants' proposed Exhibit N, annexed to the Harvis Decl. as Exhibit 2, consists of Google Maps images and undated photographs that appear to depict the vicinity of the 2010 show-up. There is nothing in the record to suggest that these photographs capture any of the key locations in the case, that they are taken from a relevant vantage or that they accurately depict the scene of any events occurring on July 30, 2010.

Setting aside authenticity concerns, the photographs are misleading and confusing because they depict a daylight scene when it is undisputed that the events

at issue took place at or after twilight. Indeed, the last seventeen photographs in the exhibit, presumably taken at least a decade after the events, appear taken at midday in sunshine with no distance markers or street signs. *See* Fed. R. Evid. 403, 901.

If the purpose of the evidence is to allow the jury to understand the mechanics of the show-up, these images are inaccurate in precisely the most critical aspects. They would lead a reasonable juror to conclude that the show-up was conducted in the middle of a sunny day with Villamore not in the back of a police car unable to see but rather standing in the middle of the road with a clear vantage. This is at odds with the record and thus confusing and highly prejudicial, and the evidence should be precluded.

### 9. Defense counsel's statements at plaintiff's trial and plaintiff's statements at sentencing should be precluded.

Plaintiff expects that defendants will contend at trial – as they did at summary judgment – that plaintiff's criminal defense attorney's argument that the blade purportedly found on plaintiff was different than the knife described by Villamore constitutes an admission under Fed. R. Evid. 801(d)(2) that plaintiff possessed the Sawzall blade. Defendants will similarly seek to offer the supposed admission at plaintiff's sentencing that he was "in possession of a Sawzall blade" to demonstrate that his current denial of possession is a fabrication. But this evidence should be precluded.

First, plaintiff's remarks at sentencing are of no moment. When read in context, it is clear that plaintiff was engaging in plea discussions at that time, which are categorically inadmissible under Fed. R. Evid. 410. *See* Sentencing transcript,

17

annexed to the Harvis Decl. as Exhibit 3, p. 8. Moreover, even in the same moment that plaintiff indicated his willingness to plead to the lesser charge he maintained his fundamental factual denial, stating: "I am not willing to take 7 years for a possession of something I am not in possession of." Because the statement was made in the context of plea discussions, it should not be admitted in accordance with Rule 410. To the extent it is admitted, which plaintiff respectfully submits it should not be, it must be presented alongside plaintiff's denial pursuant to Rule 106.

Second, the statements in plaintiff's counsel's summation adopting the State's theory that plaintiff was found with the Sawzall blade should not be admitted against plaintiff as a party admission. The Second Circuit, in *U.S. v. McKeon*, expressly "circumscribe[d] the evidentiary use of prior jury argument." 738 F.2d 26, 33 (2d Cir. 1984).

> Before permitting such use, the district court must be satisfied that the prior argument involves an assertion of fact inconsistent with similar assertions in a subsequent trial. Speculations of counsel, advocacy as to the credibility of witnesses, arguments as to weaknesses in the prosecution's case or invitations to a jury to draw certain inferences should not be admitted. The inconsistency, moreover, should be clear and of a quality which obviates any need for the trier of fact to explore other events at the prior trial. The court must further determine that the statements of counsel were such as to be the equivalent of testimonial statements by the defendant. The formal relationship of the lawyer as agent and the client as principal by itself will rarely suffice to show this since, while clients authorize their attorneys to act on their behalf, considerable delegation is normally involved and such delegation tends to drain the evidentiary value from such statements. Some participatory role of the client must

be evident, either directly or inferentially as when the argument is a direct assertion of fact which in all probability had to have been confirmed by the defendant.

Finally, the district court should, in a Fed. R. Evid. 104(a) hearing outside the presence of the jury, determine by a preponderance of the evidence that the inference the prosecution seeks to draw from the inconsistency is a fair one and that an innocent explanation for the inconsistency does not exist. Where the evidence is in equipoise or the preponderance favors an innocent explanation, the prior opening statement should be excluded. We impose this requirement so as to allow leeway for advocacy and to lessen the burden of choice between the defendant's not explaining the inconsistency to the jury or sacrificing other valuable rights. Moreover, where the attorney-client privilege, the privilege against self-incrimination, the fear of impeachment by a prior conviction, apprehension over having to change attorneys, the revelation of work product, trial tactics, or legal theories of defense counsel may be involved in explaining the changes in the defendant's version of events, the court should offer an opportunity to the defense to present those reasons *in camera,* outside the presence of the jury and of the prosecution.

*Id.*

Here, plaintiff has maintained a plausible and innocent explanation – his attorney wanted to avoid his wrongful conviction on robbery charges and therefore admitted, *arguendo*, that the Sawzall blade was in plaintiff's possession, which could not be factually contested at trial given plaintiff's exercise of his right not to testify. If it should please the Court, this sort of common-sense explanation rooted in trial strategy and practical considerations is precisely what the Second Circuit contemplated when it limited the admissibility of attorney arguments in *McKeon*. If

19

admitted, this evidence will also invite a needless and confusing mini-trial on plaintiff's criminal defense attorney's trial strategy.

For these reasons, plaintiff respectfully requests that the Court preclude admission of the statements at plaintiff's sentencing and by his criminal defense attorney at both trials.

### 10. Defendants should be precluded from mentioning plaintiff's nickname.

During the instant civil action, it was revealed that plaintiff has used the nickname "Man" since his mother bestowed the generic moniker on him in childhood. Defendants will likely argue at trial that this is evidence of plaintiff's guilt, since Viola Villamore has said that her assailant identified himself to her as "Manny." However, this evidence should be precluded for several reasons.

First, plaintiff's guilt is not at issue and this evidence is therefore irrelevant. Second, probable cause is also not at issue. And even if it was, the evidence would still be irrelevant because it is undisputed that the officers and prosecutors did not know plaintiff's nickname while the charges were pending and did not and could not have offered any evidence in that connection against him.

Accordingly, evidence of plaintiff's childhood nickname should be precluded.

## Conclusion

For the foregoing reasons, plaintiff respectfully requests that this Honorable Court grant plaintiff's motions *in limine* in their entirety and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
        September 17, 2025

                    Elefterakis, Elefterakis & Panek

                    _____
                    Gabriel P. Harvis
                    Baree N. Fett
                    80 Pine Street, 38th Floor
                    New York, New York 10005
                    (212) 532-1116

                    *Attorneys for plaintiff Kenyatta James*

21